UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| LIMOLINER, INC., | : | CIVIL ACTION NO. |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| DATTCO, INC., | : | |
| Defendant. | : | |

## NOTICE OF REMOVAL

**TO:  THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF MASSACHUSETTS**

Pursuant to 28 U.S.C. § 1441 et seq., the Defendant, Dattco, Inc. ("Dattco"), by and

through its undersigned counsel, hereby removes this action from the Superior Court of the

Commonwealth of Massachusetts, County of Norfolk, to this Court on the grounds that this

Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a)(1) because there

is complete diversity of citizenship between the parties and the amount in controversy exceeds

$75,000, exclusive of interest and costs. The grounds for removal are as follows:

1.      This action was commenced in the Superior Court of the Commonwealth of

Massachusetts for the County of Norfolk by summons, verified complaint, motion for

preliminary relief, memorandum in support thereof, and related papers dated October 5, 2011.

Copies of the summons, complaint and all other initiating documents filed in the state court are

attached as **Exhibit A**.

2.      Dattco received service of the attached summons and verified complaint by

process server on October 6, 2011.

3.      In the Complaint, the Plaintiff, LimoLiner, Inc. ("LimoLiner"), alleges that it "is a

Massachusetts corporation with a usual place of business located at 100 Wales Avenue, County

of Norfolk, Avon, Massachusetts." Verified Compl. ¶ 1.

1

4.      In the Complaint, LimoLiner alleges that Dattco is "a Connecticut corporation registered to do business in the Commonwealth of Massachusetts, with its usual place of business located at 86 York Avenue, Randolph, County of Norfolk, Massachusetts." Verified Compl. ¶ 3.

5.      Dattco is a Connecticut corporation with a principal place of business located at 583 South Street, New Britain, Connecticut.

6.      LimoLiner claims that it has suffered damages from Dattco's alleged failure to timely repair and return a bus owned by LimoLiner pursuant to an agreement between the parties. The verified complaint alleges causes of action for (1) breach of contract (count one); (2) misrepresentation (count two); (3) replevin (count three); (4) negligence (count four); and (5) violation of Mass. Gen. Laws ch. 93A, § 11 (count five). LimoLiner seeks damages, including double or treble damages under count five, as well as attorneys' fees, costs, and interest.

7.      LimoLiner also alleges that the defendant's actions have caused it irreparable harm and accordingly seeks the return of "wrongfully held property." See Verified Compl. ¶¶ 41-43.

8.      While LimoLiner's prayer for relief seeks "damages as proved at trial," the verified complaint also alleges that as a result of the actions of the defendant, "LimoLiner has suffered . . . damages as a result of the loss of profits calculated from July 1, 2011, to [the date of the verified complaint] of approximately $130,000." Verified Compl. ¶ 30.

9.      Accordingly, pursuant to the allegations in the verified complaint, the amount in controversy exceeds $75,000, exclusive of interest and costs.

10.     Consequently, the verified complaint alleges a civil action between citizens of different states, and the amount in controversy exceeds the sum of $75,000, exclusive of interest

2

and costs. Accordingly, this action is removable to federal court pursuant to 28 U.S.C. § 1441(a) because it could have been filed originally in this Court pursuant to the diversity of citizenship jurisdiction conferred by 28 U.S.C. § 1332(a)(1).

11.     Venue for removal is proper in this district under 28 U.S.C. § 1441(a) because this district embraces the Superior Court of the Commonwealth of Massachusetts for the County of Norfolk, the forum in which the removed action was pending.

12.     Pursuant to 28 U.S.C. § 1446(b), this Notice of Removal is being filed within 30 days of service of the summons and verified complaint.

13.     Pursuant to 28 U.S.C. § 1446(d), promptly after the filing of this Notice of Removal, the defendant will give written notice to LimoLiner and file a copy of this Notice of Removal with the Clerk of the Superior Court of the Commonwealth of Massachusetts for the County of Norfolk.

WHEREFORE, Dattco hereby gives notice that the action now pending against it in the Superior Court of the Commonwealth of Massachusetts for the County of Norfolk is removed from that court to the United States District Court for the District of Massachusetts, in accordance with the provisions of the United States Code.

DEFENDANT
DATTCO, INC.

By:     /s/ Stephen Ryan, Jr.
        Stephen Ryan, Jr. (Ma. BBO No. 669727)
        Riemer & Braunstein LLP
        Three Center Plaza
October 24, 2011       Boston, MA 02108
        Telephone: 617-880-3572
        Fax: 617-692-3572
        sryan@riemerlaw.com

## CERTIFICATE OF SERVICE

I, Stephen Ryan, Jr., Esquire, hereby certify that on this, the 24 of October, 2011, I caused a true and accurate copy of the foregoing document to be served by first class mail, postage prepaid, upon the following:

James S. Singer (Counsel to the Plaintiff)
Rudolph Friedman LLP
92 State Street
Boston, MA 02109

/s/ *Stephen Ryan, Jr.*
Stephen Ryan, Jr.

1380927.2

22058.032/547698.1

**<u>EXHIBIT A</u>**

# COMMONWEALTH OF MASSACHUSETTS

NORFOLK, ss.

SUPERIOR COURT
CIVIL ACTION

NO.   11-1477

DATE OF SERVICE

*10-6-11*

TRUE COPY ATTEST
*S. B. Minkofsky*
CONSTABLE
RULE 4-C PROCESS SERVER

LIMOLINER INC
................................................, *Plaintiff(s)*

v.

DATTCO INC
................................................, *Defendant(s)*

## SUMMONS AND ORDER OF NOTICE

To the above-named Defendant:

You are hereby summoned and required to serve upon ..James S Singer, Esquire..,
plaintiff's attorney, whose address is ..Rudolph Friedmann LLP 92 State Street, Boston, MA 02109..,
an answer to the complaint which is herewith served upon you, within 20 days after service of this
summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken
against you for the relief demanded in the complaint. You are also required to file your answer to the
complaint in the office of the Clerk of this court at Dedham either before service upon the plaintiff's
attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which
you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter
of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

WE ALSO NOTIFY YOU that application has been made in said action, as appears in the complaint,
for a preliminary injunction and that a hearing upon such application will be held at the court house —
at said Dedham — in the first session without jury of our said court on ..Tuesday..

the ..11th.. day of ..October.. A.D. 20 11, at ..2:00.. o'clock P.M., at which you may
appear and show cause why such application should not be granted.

WITNESS, **BARBARA J. ROUSE, Esquire** , *Esquire*, at ..Dedham.. the

..5th.. day of ..October.., in the year of our Lord two thousand and ..eleven.. .

*Walter F. Timilty* Clerk,

NOTES:
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all such defendants should appear in the caption.
   If a separate summons is used for each defendant, each should be addressed to the particular defendant.

F-34

## COMMONWEALTH OF MASSACHUSETTS

NORFOLK, SS.                                SUPERIOR COURT DEPARTMENT
                                            CIVIL ACTION NO.

---

LIMOLINER INC.,                          )
            Plaintiff,                       )
                                         )
vs.                                      )
                                         )
DATTCO, INC.,                            )
            Defendant.                       )
                                         )

---

### VERIFIED COMPLAINT

### Introduction

1.      This is an action commenced by the Plaintiff, the owner and operator of a luxury motorcoach service that provides transportation for individuals, against the Defendant, who operates a repair shop, for breach of contract, misrepresentation, replevin relief pursuant to G.L. c. 214, § 3(1), negligence and violation of G.L. c. 93A, § 11. The Plaintiff also seeks preliminary relief ordering the Defendant to release the vehicle at issue to the Plaintiff in exchange for the Plaintiff's deposit (with the Court or in escrow with Plaintiff's counsel or jointly with Plaintiff's counsel and Defendant's counsel) the amounts claimed due by the Defendant for alleged repairs, namely $10,404.00, pending further order of the Court.

### Parties

2.      The Plaintiff LimoLiner Inc. (hereinafter "Plaintiff" or "LimoLiner") is a Massachusetts corporation with its usual place of business located at 100 Wales Avenue, County of Norfolk, Avon, Massachusetts.

3.      The Defendant Dattco, Inc. (hereinafter "Defendant" or "Dattco") is a Connecticut corporation registered to do business in the Commonwealth of Massachusetts, with

its usual place of business located at 86 York Avenue, Randolph, County of Norfolk, Massachusetts. On information and belief, Dattco does repair service of motor vehicles under the name "Dattco Sales & Services."

## Statement of Facts

4.    LimoLiner provides scheduled luxury transportation between Boston, Framingham and New York City up to five times daily, and has done so since 2003. Since locating to its Avon facility in 2009, it has carried out certain repairs and maintenance of its fleet of six (6) motor coachs in-house. On occasion, as needed, specialist work is contracted out to outside repair facilities in Massachusetts.

5.    LimoLiner's vehicles (hereinafter referred to as "Liners") are remodeled large motorcoach shells, fitted out with a range of onboard features, including kitchens, washrooms, luxury seating, satellite tracking for TV and radio, large screen televisions, 7 audio channels, 110v and 12v outlets at each seat, wireless online internet , movies, a public address system and GPS navigation. Meals and hot and cold drinks are served at seat tables by an onboard attendant. The electrical systems in the cabins require significant power, obtained using substantial battery packs and power inverters.

6.    In May 2011, one of the Plaintiff's Liners, No. 3001, VIN #IM8TRYAX2P061828, an MCI E4500 2004 conversion (hereinafter referred to as "the Liner" or "Liner 3001"), had been out of service for several months. LimoLiner's purchase price for the Liner was $630,000.00. The Liner had mechanical and electrical failures needing repair. Between approximately May 6 and May 27, 2011, LimoLiner performed some repair work in-house. At that time, it became clear that a new or repaired turbo booster was required, and the power inverter(s) needed repair or replacement, along with alternators and other electrical items.

7.     To operate a schedule of up to five (5) daily round trips to New York, a fleet of at least five (5) well maintained Liners is the minimum required. It is, however, preferable to have six (6) Liners to have flexibility and more time to carry out maintenance and repairs. In May, 2011, the Plaintiff had five (5) operating Liners (excluding Liner 3001). It was essential that Liner 3001 be returned to service as soon as possible because one of Plaintiff's other Liners, Liner 3000, was due for disposal and was about to be put up for sale. After the disposal of Liner 3000, it would then take approximately four (4) months to buy a motorcoach shell and have it completed as a finished liner as its replacement.

8.     On or about May 30, 2011, Limoliner's then General Manager, Stephen Connolly ("Connolly"), and LimoLiner mechanic Michael Shaughnessy ("Shaughnessy") met at the Avon garage with Robert Hazel ("Hazel"), who is believed to be a service manager of Dattco and his colleague, Jerry Taglieri ("Taglieri").   It was clear to LimoLiner personnel after its initial work on the Liner that LimoLiner personnel could not perform the complex electrical work on the Liner. Based on the representation of Dattco, LimoLiner believed Dattco had the experience and resources to complete the electrical repairs to the Liner.

9.     It was agreed at the May 31, 2011, meeting that the vehicle would be towed to Dattco to be fully inspected, to have Dattco provide a list of needed repair work and an estimate of the labor required.  It was made clear to Hazel that the Liner was needed back as soon as possible, and he represented that Dattco would start working on the Liner right away, as Hazel stated that Dattco's repair facility was not busy at the time.  It was also discussed at the May 31, 2011, meeting that the Liner's inverters were a major concern (one appeared to be burnt out) and the repair/replacement of the Liner's inverters was one of the tasks Dattco would undertake.

3

10.     With summer travel season about to start, it was essential that Liner 3001 be returned to service as soon as possible.  This information was clearly conveyed to Dattco and Dattco represented that it had the capacity to begin working on the vehicle immediately upon receipt of the Liner.  As mentioned above, the repair or replacement of one of the two power inverters was the main issue that Dattco needed to attend to, and Dattco was aware of this fact.  One inverter appeared burned out. Other electrical work was also needed.

11.     The Liner was towed from LimoLiner's facility in Avon, Massachusetts to Dattco in Randolph, Massachusetts on May 31, 2011.

12.     According to certain of Dattco's time records and mechanics' notes that were forwarded by Dattco on or about July 29, 2011 (hereinafter "Dattco's Repair Records"), Dattco first attended to the vehicle on June 9, 2011, nine (9) days after it was towed to Dattco's facility.  (A copy of Dattco's Repair Records is attached and incorporated herein as Exhibit A.)  According to Dattco's Repair Records, on June 9, 2011, it appears the only "work" performed by Dattco was jump starting the Liner and bringing it inside.  The actual inspection of the Liner did not occur, according to Dattco's records, until June 10, 2011.

13.     On or about June 10, 2011, Dattco faxed to LimoLiner a list of work that needed to be done on the Liner.  A copy of Dattco's list of repairs is attached hereto and incorporated herein as Exhibit B.

14.     After receipt of Dattco's list of repairs, Dattco's shop foreman, Ed Corr, and LimoLiner's in-house mechanic Shaughnessy had a telephone conversation to discuss which items LimoLiner would do in-house, such as body work and certain mechanical work, and what work Dattco would do.  Based on the conversation, Shaughnessy marked his list with an "X" as to work LimoLiner would perform, and a "√" for work to be performed by Dattco.  The inverters

4

were not on the list as they were already discussed and it had been agreed that Dattco would take care of that item. Attached hereto and incorporated herein as Exhibit C is a copy of Shaughnessy's mark-ups on Exhibit B.

15.     Dattco advised Connolly that the labor needed for the repairs required of them would total about 40 hours. Dattco advised LimoLiner that it operated 24 hours a day, 7 days a week, utilizing three (3) shifts of employees. Based on this information, LimoLiner reasonably believed that the Liner would be conservatively available in two weeks, on or about June 24, 2011, and thus LimoLiner instructed Dattco to perform the work. No specific cost estimate was provided by Dattco. On June 14, 2011, Connolly scheduled a meeting with Dattco for an update.

16.     According to Dattco's Repair Records, from June 9, 2011 to July 28, 2011, four different Dattco mechanics performed work, albeit only sporadically, on the Liner. On most days, no work was done on the Liner. According to Dattco's Repair Records, it accomplished very little work in the 62 hours it claimed to have spent on the Liner.

17.     On July 28, 2011, Connolly received an email from Hazel which stated, among other things: "Trying to find 110v Inverter to replace one that looks burned out from what you guys are telling us" [which LimoLiner told them about on May 30)]; and "Possible Turbo boost problem?" [ which Hazel's colleague Corr had been told on June 9 by Shaughnessy]; and check for " engine warning lights" [which was already on Dattco's June 10, 2011 repair list (see Exhibit B) and was caused by the Turbo boost which was defective.] A copy of this email is attached hereto and incorporated herein as Exhibit D. Exhibit D includes another email from Corr to Hazel showing how little substantive work had been done in the approximately sixty (60) days since the Liner was received by Dattco.

18.     Through the end of July, 2011, Connolly made at least three (3) visits to Dattco and made several calls in an effort to determine the status of the Liner, when it would be ready, and the reasons for the delays, all without success.  Dattco repeatedly advised Connolly, the Liner will be "ready tomorrow," or "almost done," or made similar assurances.

19.     The July 28th email from Hazel to Connolly stating, "Trying to find 110v Inverter" was startling, given this was two months after it had been made clear from the outset that power conversion by inverters was the main problem.

20.     On August 4, 2011, over two months after the Liner was towed to Dattco, LimoLiner President and owner Fergus McCann ("McCann") and Connolly met with Hazel and Taglieri at Dattco's premises. No explanation was given for the failure by Dattco to carry out the agreed-upon repairs within a reasonable amount of time, which should not have exceeded two weeks. At that meeting, Hazel admitted that "we dropped the ball" admitting Dattco's failure to provide the needed repairs as it agreed and represented it would do.

21.     Following the meeting, Connolly sent Dattco a letter dated August 8, 2011, repeating the questions asked at the August 4, 2011, meeting regarding what commitment Dattco would make to completing the work as agreed and how Dattco would compensate LimoLiner for its losses as a result of Dattco's default on its promises and representations. No response was provided.  A copy of the August 8, 2011, letter is attached hereto and incorporated herein as Exhibit E.

22.     Shortly after the August 8, 2011, letter, McCann received a call from Hazel stating that Connolly had cancelled an order for an inverter from a supplier. This was absolutely not true.  In fact, as noted above, as late as the end of July, Hazel was only starting to look for a replacement inverter and asked Connolly to help find one.  Connolly tried to do so.

23.     Further efforts by Connolly to get Dattco to complete the job included an e mail dated August 5, 2011, to Hazel which asked, "Is Dattco truly capable of repairing this MCI vehicle to our satisfaction?" Hazel replied three days later, "Yes, we can get it done." A copy of this email exchange is attached hereto and incorporated herein as Exhibit F. Notwithstanding Hazel's assurance, the agreed-upon work was not completed.

24.     Finally, an Invoice dated August 25, 2011, was faxed by Dattco to LimoLiner. The first line of the Invoice stated, "repair coach to run." Attached hereto and incorporated herein as Exhibit G is a copy of Dattco's Invoice and its fax cover sheet. The Invoice omits any mention of the required inverter, but demands payment of $10,404. The fax cover sheet stated, "acceptable form of payment will be by Bank Check only." The Invoice date is eighty-seven (87) days after Dattco took possession of the Liner, which should have been repaired by on or about June 24, 2011.

25.     LimoLiner, through its counsel, offered to hold in escrow the amount sought by Dattco for the alleged repairs to date per Dattco's Invoice, namely $10,404, in exchange for Dattco's release of the Liner to LimoLiner, and suggested a dispute mechanism arrangement for the parties to resolve their dispute. Dattco flatly refused to release the Liner without payment in hand directly to Dattco. Attached hereto and incorporated herein as Exhibit H is a copy of LimoLiner's counsel's September 1, 2011 letter to Dattco.

26.     LimoLiner's attempts to obtain satisfaction from Dattco senior management finally resulted in a meeting on September 12, 2011, attended by Hazel, Taglieri and Bruce Gray, an Assistant Vice President, along with McCann and LimoLiner's counsel. At that meeting, it was acknowledged by Dattco that the necessary work required for the vehicle to function had not

been completed.  It was agreed that Dattco would provide a written statement of what work was to be done and when it could be done.

27.     On September 14, 2011, Dattco sent an estimate of $14,627 to make Liner 3001 "operable."  Attached hereto and incorporated herein as Exhibit I is a copy of the September 14, 2011, estimate.  It included providing a custom made inverter, and repair of all related connections.  LimoLiner does not understand the difference between the terms "repair coach to run" for which it was invoiced $10,404.00 (see Exhibit G), and "bring the unit to operable condition," for which LimoLiner received an estimate of an additional $14,627.00 (Exhibit I).

28.     LimoLiner's counsel had a further conversation with Dattco regarding LimoLiner's depositing in escrow the disputed amount requested by Dattco per its Invoice in order for LimoLiner to obtain possession of Liner 3001.  Dattco continued to refuse to release Liner 3001 until it received full payment.

29.     The Liner remains at Dattco at this time, approximately one hundred twenty (120) days after it was towed to Dattco's facility. Dattco refuses to release it to Limoliner, so that the Liner can be properly repaired elsewhere and LimoLiner can mitigate its damages by getting the Liner on the road as soon as possible.

30.     As a result of Dattco's actions in failing to carry out the agreed contract and per its representations, and in recognition that time was of the essence regarding repair of the Liner, LimoLiner has suffered the loss of use of the Liner and damages as a result of the loss of profits calculated from July 1, 2011, to date of approximately $130,000.  Damages continue at the rate of approximately $11,000 per week as LimoLiner operates ineffectively with a fleet depleted from five to four Liners.

31.     With a reduced schedule offering fewer options, there has been a large reduction in passenger bookings. In addition, the shortage of vehicles has meant that, when another liner went out for service, there was no replacement available, and in other situations, the other Liners were overused resulting in increased repair costs and lack of flexibility. As a result, LimoLiner has had to charter standard motorcoaches on several occasions in order to meet its customers' needs. In fact, the Plaintiff has been forced to provide refunds to passengers so affected as a result of not providing its own Liners with their amenities, space and services.

32.     The lack of travel options for its customers, along with its forced use of an inferior coach, have consequently resulted in diminution of LimoLiner's reputation, and have caused the company to lose both potential new customers and repeat business.

## Causes of Action

### Count I – Breach of Contract

33.     The Plaintiff repeats and realleges paragraphs 1-32 above as set forth herein.

34.     Plaintiff and Defendant entered into a binding and enforceable contract whereby the Defendant agreed to perform vehicle repair services for the Plaintiff.

35.     Defendant breached its obligations by failing to perform its work in a timely, diligent and workmanlike manner.

36.     As a result of the breach of its contractual obligation, Plaintiff suffered monetary damages.

### Count II - Misrepresentation

37.     The Plaintiff repeats and realleges paragraphs 1-36 as set forth herein.

38.     The Defendant made material misrepresentations to the Plaintiff, including but not limited to the misrepresentation that the Defendant had the ability to perform the necessary repairs to the Plaintiff's vehicle in a timely manner.

39.     The Defendant made material misrepresentations of fact which were reasonably relied upon by the Plaintiff, and as a result of said misrepresentations, the Plaintiff suffered damages.

### Count III - Replevin

40.     The Plaintiff repeats and realleges paragraphs 1-39 as set forth herein.

41.     The Defendant has wrongfully and unlawfully withheld property belonging to the Plaintiff valued at more than twenty dollars ($20).

42.     The Plaintiff is entitled to recovery of its property from the Defendant.

43.     The Plaintiff continues to suffer irreparable harm while the wrongfully withheld property is in possession of the Defendant.

### Count IV - Negligence

44.     The Plaintiff repeats and realleges paragraphs 1-39 as set forth herein.

45.     As a result of the agreement between the parties, the Defendant owed a duty of care to the Plaintiff.

46.     The Defendant breached the duty of care owed to the Plaintiff.

47.     As a result of such breach, the Plaintiff has suffered damages for which the Defendant is responsible.

48.     Such damages were caused by the actions of the Defendant.

### Count V – Violation of G.L. c. 93A, § 11

49.     The Plaintiff repeats and realleges paragraphs 1-48 as set forth herein.

50.     The Plaintiff and the Defendant are engaged in trade or commerce.

51.     The Defendant engaged in unfair or deceptive acts or practices as set forth above, including, but not limited to, its misrepresentations and breaches taken against the Plaintiff.

52.     In addition, the Defendant violated the rules and regulations as promulgated by the Massachusetts Attorney General applicable to repair shops, 940 C.M.R. 5.05, including, but not limited to:

    (a)   On information and belief, prior to commencing repairs on the Liner, failing to record in writing the information required by 940 C.M.R. 5.05(2);

    (b)   Charging LimoLiner for repairs to the Liner without written authorization or waiver signed by LimoLiner as required by 940 C.M.R. 5.05(3);

    (c)   On information and belief, failing to maintain records as required by 940 C.M.R. 5.05(5); and

    (d)   Failing to complete repairs of the Liner in accordance with time constraints and procedures required by 940 C.M.R. 505(5).

53.     The actions or practices of the Defendant caused injury and damage to the Plaintiff and said actions or practices were, on information and belief, willful or knowing and in violation of G.L. c. 93A § 2 which entitles the Plaintiff to double or treble damages, and its reasonable attorneys' fees.

WHEREFORE, the Plaintiff prays this Honorable Court to enter judgment against the

Defendant in favor of the Plaintiff pursuant to Counts I, II, III, IV and V for damages as proved

at trial, and double or treble such amount as provided by G.L. c. 93A plus reasonable attorneys'

fees, costs and interests.

Respectfully submitted,
LimoLiner, Inc.,
Plaintiff,
By its attorneys,

James S. Singer
BBO # 464560
Zachary J. Tuck
BBO # 666761
RUDOLPH FRIEDMANN LLP
92 State Street
Boston, MA 02109
(617) 723-7700
jsinger@rflawyers.com
ztuck@rflawyers.com

Date:   October 5, 2011

## Verification

I, Fergus McCann, President of LimoLiner Inc., hereby state that I have read the factual allegations set forth in the foregoing Verified Complaint and that said factual allegations are true and accurate to the best of my knowledge, information or belief; and as to the allegations based upon information and belief I believe this information also to be true.

Signed under the pains and penalties of perjury this 5th day of October, 2011

Fergus McCann

12



MIXED FIBER
RECYCLED

80000 SERIES
30% P.C.W.

FSC

Mixed Sources
Product group from well-managed
forests, controlled sources and
recycled wood or fiber

www.fsc.org
Cert No. SW-COC-004131
© 1996 Forest Stewardship Council

**Job Card**                                                                    DATTCO

| | | | |
|---|---|---|---|
| Activity ID | U 179598 | Vehicle ID | LIMO3001 (17396) |
| Activity | Unscheduled Activity - REPAIR | Vehicle Make | MCI |
| Activity Date | 6/8/2011        Time  08:00 | Vehicle Model | TRANSIT |
| Duration | 120 | Body Make | |
| Location | Bay - BAY13 | Body Model | |
| Client | LIMOLINER, INC | Client Tel No | 3398026411102 |

| Available From | Time | Required By | Time |
|---|---|---|---|
| | | | |

9020  6-9-11  batterys dead Jump started

9020  6-10-11  Performed Inspection

9020  6-16-11  batterys dead Jump start

9020  6-17  installed ignition switch
      installed R/s mirror
      checked charging system needs Alt 27.i volt fast Idle

9020  Installed A/c blower motor

9020  6-24-11  Removed 1 Alt and started Removing 2nd Alt

9503  6-29-11  REMOVED SECOND ALT

9503  6-29-11  CLEANED ALT

9503 - 7-1-11  Pulled in Installed on Lift

1020 - 7-5-11  finish installing Alts

1020 - 7-6-11  Installed ground strap to Alt not charging

7-7-11  Installed new alternator belt

03- 7-7-11  Ding No charging Hooked up Able to Proper Connection on
4 tenate  Replaced left Front hub cap after scrapping off all the silicon that
was applied to seal leak

7/21  Wouldn't start had to put it on charger then it died half
way into shop so had to re charge all over again finally
got it in a place so it can be worked on

| Completed Date/Time | .......................... | Completed Distance | .......................... |
|---|---|---|---|
| Signature(s) | .......................... | Date | .......................... |
| Signature of Supervisor | .......................... | Date | .......................... |

Repair Estimate

| CUSTOMER'S NAME | Limo liner 3001 | | OFF | | 1 | | REG. | OVT. |
|---|---|---|---|---|---|---|---|---|
| JOB NO. 179598 | OPERATION Jump start | | | | | | | |
| DATE 6-9 | | | | | | | | |
| EMP. NO. 9020 | bring inside | | ON | 23 | | 2 | | |

| CUSTOMER'S NAME | limo liner 3001 | | OFF | | 4 | REG. | OVT. |
|---|---|---|---|---|---|---|---|
| JOB NO. 179598 | OPERATION A-service | | | 2.4 | | | |
| DATE 6-10 | | | | | | | |
| EMP. NO. 9020 | | | ON | | | | |

| CUSTOMER'S NAME | Limo Liner 3001 | | OFF | | 5 | REG. | OVT. |
|---|---|---|---|---|---|---|---|
| JOB NO. 179598 | OPERATION A-service | | | 1.0 | | | |
| DATE 6-10 | | | | 4 | | | |
| EMP. NO. 9020 | | | ON | | | | |

| CUSTOMER'S NAME | limo liner 3001 | | OFF | | 0 | .1 |
|---|---|---|---|---|---|---|
| JOB NO. 179598 | OPERATION Jump start | | | 1.9 | | |
| DATE 6-16 | | | H | 22 | | |
| EMP. NO. 9020 | | | ON | | | |

| CUSTOMER'S NAME | Limo liner 3001 | | OFF | | 1 | .2 |
|---|---|---|---|---|---|---|
| JOB NO. 179598 | OPERATION Ignition switch | | | 1.1 | | |
| DATE 6-17 | | | R | | | |
| EMP. NO. 9020 | | | ON | | | |

| CUSTOMER'S NAME | Limo liner 3001 | | OFF | | 1 | REG. | OVT. |
|---|---|---|---|---|---|---|---|
| JOB NO. 179598 | OPERATION Mirror | | | .7 | | | |
| DATE 6-17 | | | | | | | |
| EMP. NO. 9020 | | | ON | | .2 | | |

| CUSTOMER'S NAME | limo liner 3001 | | OFF | | 3 | .5 |
|---|---|---|---|---|---|---|
| JOB NO. 179598 | OPERATION check charging | | | 1.6 | | |
| DATE 6-17 | | | | | | |
| EMP. NO. 9020 | | | ON | | .9 | |

| CUSTOMER'S NAME | limo liner 3001 | | OFF | | 5 | .0 |
|---|---|---|---|---|---|---|
| JOB NO. 179598 | OPERATION blower motor | | REG. | OVT. | | |
| DATE 6-17 | | | | .5 | | |
| EMP. NO. 9020 | | | ON | 3 | .5 | |

| CUSTOMER'S NAME | limo liner 3001 | | OFF | | 6 | 7 |
|---|---|---|---|---|---|---|
| JOB NO. 179598 | OPERATION blower motor | | REG. | OVT. | | |
| DATE 6-17 | | | | 2.4 | | |
| EMP. NO. 9020 | | | ON | 4 | .6 | |

| CUSTOMER'S NAME | Limo liner 3001 | | OFF | | 6 | 4 |
|---|---|---|---|---|---|---|
| JOB NO. 179598 | OPERATION Remove | | REG. | OVT. | | |
| DATE 6-24 | Alts | | | 6 | | |
| EMP. NO. 9020 | | | ON | 5 | .0 | |

| CUSTOMER'S NAME | | | OFF | 12 | 5 | .3 |
|---|---|---|---|---|---|---|
| JOB NO. 179598 | OPERATION REMOVE GENERATOR | | REG. | OVT. | | |
| DATE 6-29-11 | | | | 1.0 | | |
| EMP. NO. 9503 | | | ON | 11 | .3 | |

| CUSTOMER'S NAME | | | √ OFF | 14 | 7 |
|---|---|---|---|---|---|
| JOB NO. 179598 | OPERATION REMOVE GENERATOR | | REG. | OVT. | |
| DATE 6-29-11 | | | 1.3 | | |
| EMP. NO. 9503 | | | √ ON | 12 | |

| CUSTOMER'S NAME | Limo Liner | | | TU | 19 |
|---|---|---|---|---|---|
| JOB NO. 179598 | OPERATION REPAIR | | REG. | OVT. | |
| DATE 7-19 | INVERTER | 63 | | | |
| EMP. NO. 2808 | | | ON | 13 | |

| CUSTOMER'S NAME | Limo Liner | | | TU | 21 |
|---|---|---|---|---|---|
| JOB NO. 179598 | OPERATION REPAIR | | REG. | OVT. | |
| DATE 7-19 | INVERTER | 1.7 | | | |
| EMP. NO. 2808 | | | ON | 20 | |

247

| CUSTOMER'S NAME | Limo Liner 3001 | | OFF | 7 | .6 |
|---|---|---|---|---|---|
| JOB NO. 179598 | OPERATION | REG. | OVT. | | |
| DATE 7-7-11 | Alternator Belt | | | 7 | .0 |
| EMP. NO. 9520 | | | ON | | |

| CUSTOMER'S NAME | Limo Liner 3001 | | OFF 18 | 1 | .5 |
|---|---|---|---|---|---|
| JOB NO. 179598 | OPERATION | REG. | OVT. | | |
| DATE 7-7-11 | DIAG no charging | 4.6 | | 13 | .9 |
| EMP. NO. 9503 | | | ON | | |

| CUSTOMER'S NAME | Limo Liner 3001 | | OFF 21 | 3 | .7 |
|---|---|---|---|---|---|
| JOB NO. 179598 | OPERATION | REG. | OVT. | | |
| DATE 7-7-11 | No Charging | 2.8 | | 18 | .9 |
| EMP. NO. 9503 | | | ON | | |

| CUSTOMER'S NAME | Limo Liner | | OFF | 8 | |
|---|---|---|---|---|---|
| JOB NO. 179598 | OPERATION | REG. | OVT. | 14 | .7 |
| DATE 7-7 | DIAGNOSE | | | | |
| EMP. NO. 9808 | CHARGING 1.4 | | ON | 13 | .3 |

| CUSTOMER'S NAME | Limo Liner | | OFF | 7 | |
|---|---|---|---|---|---|
| JOB NO. 179598 | OPERATION | REG. | OVT. | 18 | .4 |
| DATE 7-7 | DIAGNOSE | | | | |
| EMP. NO. 9808 | CHARGING 2.9 | | ON | 15 | .5 |

| CUSTOMER'S NAME | | | OFF | 5 | |
|---|---|---|---|---|---|
| JOB NO. 9598 | OPERATION | REG. | OVT. | 21 | .0 |
| DATE 7-7 | DIAGNOSE | | | | |
| EMP. NO. 9808 | CHARGING 3.1 | | ON | 18 | .9 |

| CUSTOMER'S NAME | Limo Liner | | OFF | 6 | |
|---|---|---|---|---|---|
| JOB NO. 179598 | OPERATION | REG. | OVT. | 14 | .3 |
| DATE 7/15 | Replace Hub | .8 | | 13 | .5 |
| EMP. NO. 9520 | Cap | | ON | | |

| CUSTOMER'S NAME | Limo Liner | | OFF | | |
|---|---|---|---|---|---|
| JOB NO. 179598 | OPERATION | REG. | OVT. | | |
| DATE 7-19-11 | A/C Belt ADJ | | | 13 | .6 |
| EMP. NO. 9503 | | | ON | | |

| CUSTOMER'S NAME | Limo Liner | | OFF 18 | 2 | .2 |
|---|---|---|---|---|---|
| JOB NO. 179598 | OPERATION | REG. | OVT. | | |
| DATE 7-19-11 | Oil Leak at | | | | |
| EMP. NO. 9503 | Alt | | | | |

| CUSTOMER'S NAME | Limo Liner | | OFF 19 | 3 | .6 |
|---|---|---|---|---|---|
| JOB NO. 179598 | OPERATION | REG. | OVT. | | |
| DATE 7-19-11 | Help Tom with | 1.4 | | 18 | .2 |
| EMP. NO. 9503 | Electrical | | ON | | |

| CUSTOMER'S NAME | Limo Liner | | OFF 21 | 5 | .9 |
|---|---|---|---|---|---|
| JOB NO. 179598 | OPERATION | REG. | OVT. | | |
| DATE 7-19-11 | Work on Electrical | .8 | | 20 | .1 |
| EMP. NO. 9503 | | | ON | | |

2.

19.4

62.9

| CUSTOMER'S NAME | | REG. | OVT. | OFF | 11 | 2 | .4 |
|---|---|---|---|---|---|---|---|
| JOB NO. 179578 | OPERATION INSTAL ALTENATOR | | | | 9 | | .0 |
| DATE 7-1-11 | | | 24 | | | | |
| EMP. NO. 9503 | | | | ON | | | |

| CUSTOMER'S NAME | | REG. | OVT. | OFF | 13 | 5 | .5 |
|---|---|---|---|---|---|---|---|
| JOB NO. 179598 | OPERATION INSTALL BOTH ALTENATOR | | | | 12 | | .8 |
| DATE 7-1-11 | | | ↓ 7 | | | | |
| EMP. NO. 9503 | | | | ON | | | |

| CUSTOMER'S NAME limo liner 3001 | | REG. | OVT. | OFF | 1 | | |
|---|---|---|---|---|---|---|---|
| JOB NO. 179598 | OPERATION Alt instell | | | | | | .5 |
| DATE 7-5 | | | 2.0 | | 22 | | .1 |
| EMP. NO. 9020 | | | | ON | | | |

| CUSTOMER'S NAME limo liner 3001 | | REG. | OVT. | OFF | 1h | 0.0 | |
|---|---|---|---|---|---|---|---|
| JOB NO. | OPERATION Alt grounds | | | | 2.1 | | |
| DATE 7-6 | strap | | | | 21 | | .9 |
| EMP. NO. 9020 | | | | ON | | | |

| CUSTOMER'S NAME Limo Liner | | REG. | OVT. | OFF | | | |
|---|---|---|---|---|---|---|---|
| JOB NO. 179598 | OPERATION Won't start | | | | 8 | | .3 |
| DATE 7/20 | | | 7 | | 7 | | .6 |
| EMP. NO. 9520 | | | | | | | |

| CUSTOMER'S NAME Limo Liner | | REG. | OVT. | OFF | | 3 | |
|---|---|---|---|---|---|---|---|
| JOB NO. 179598 | OPERATION Removal of | | | | 12 | | .7 |
| DATE 7/20 | oil line and Batt | 2.9 | | | 9 | | .8 |
| EMP. NO. 9520 | cable | | | ON | | | |

| CUSTOMER'S NAME Limo Liner | | REG. | OVT. | OFF | | 2 | |
|---|---|---|---|---|---|---|---|
| JOB NO. 179598 | OPERATION Install | | | | 12 | | .5 |
| DATE 7/21 | Gen | | 4.8 | H | 7 | | .3 |
| EMP. NO. 9520 | | | | ON | | | |

| CUSTOMER'S NAME Limo Liner | | REG. | OVT. | OFF | | 2 | |
|---|---|---|---|---|---|---|---|
| JOB NO. 179598 | OPERATION Getting it | | | | 8 | | .2 |
| DATE 7/25/11 | started | | .9 | | 7 | | .3 |
| EMP. NO. 9520 | | | | | | | |

| CUSTOMER'S NAME Limo Liner | | REG. | OVT. | OFF | | 7 | |
|---|---|---|---|---|---|---|---|
| JOB NO. 179598 | OPERATION Charging | | | | 16 | | .0 |
| DATE 7/25 | System | | 1.3 | | 14 | | .7 |
| EMP. NO. 9520 | | | | ON | | | |

| CUSTOMER'S NAME Limo Liner | | REG. | OVT. | OFF | | 7 | |
|---|---|---|---|---|---|---|---|
| JOB NO. 179598 | OPERATION Diag. Charge | | | | 18 | | .5 |
| DATE 7-27 | System | 1.5 | | | 17 | | .0 |
| EMP. NO. 9808 | | | | ON | | | |

| CUSTOMER'S NAME | | REG. | OVT. | OFF | | 5 | |
|---|---|---|---|---|---|---|---|
| JOB NO. 179598 | OPERATION Diag. | | | | 21 | | .9 |
| DATE 7-27 | Charge System | 2.8 | | | 19 | | .1 |
| EMP. NO. 9808 | | | | ON | | | |

18.1

**NOTES**

7/20   After getting bus where it could be worked on I began replacing alternator cable that runs from left alternator to right side generator Then had to remove generator from right side so it could be sent out and repaired or replaced

7/21   Installed new alternator reconnected all the wires and plumbing

7/25   Attempted to start vehicle but found it to have dead batteries so put it on charger to assist with starting but still ain't no where with it so left it on charger for a little bit of time then went to re-attempt to start it and it started at this point

B

NFC RECYCLED
RECYCLED

80000 SERIES
30% P.C.W.



FSC®

Mixed Sources
Product group from well-managed
forests, controlled sources and
recycled wood or fiber

Cert No. SW-COC-004131
www.fsc.org
© 1996 Forest Stewardship Council

# Limo Liner 3001    RO# 179598

**NOTES**

body)
- R/s mirror
- L/Front Bumper
- L/head light assy.
- A/c condenser door
- Rear bumper
- Engine door
- Engine door latches and stop arm
- Rear Brake light Assy.
- Wheel chair lift door
- R/s Rear A/c compressor door
- Entry door inner panel

- Not charging
- No interior lights
- Not building Air
- cluster not working
- horns Inop
- R/s Wiper Blade
- Number Plate light out
- Middle rear light out under camera
- Pre heater disabled
- Fan belt Loose
- A/c compressor belt
- A/c compressor clutch
- ignition fan out
- out side clocking lights Inop
- Engine warning light
- coolant Low
- coolant fill not mounted
- Radiator cap missing
- staying in Low ride
- L/Front hub cap cover missing
- Air Leak
- oil from Air dryer
- Battery water Low
- need to steam clean for oil Leaks
- L/Front caliper wont Adjust
- No spare tire

Limoliner 3001 RO# 179598

**NOTES**

body:

- ✓ R/S mirror
- ✓ Front Bumper X
- L/head light assy. X
- A/C condenser door X
- Rear bumper X
- Engine door X
- Engine door latches and stop arm X
- Rear Brake light Assy. X
- Wheel chair lift door X
- R/S Rear A/C compressor door X
- Entry door inner panel X

---

- ✓ Not charging
- X No interior lights
- ✓ Not building Air
- X cluster not working
- X horns Inop
- X R/S Wiper Blade
- X Number Plate light out
- X middle rear light out under camera
- X Pro heater disabled
- ✓ Fan belt Loose
- ✓ A/C compressor belt
- ✓ A/C compressor clutch
- ✓ ignition out
- ✓ out side clocking lights Inop
- NO PROBLEM ✓ Engine warning light — NO TURBO BOOST — TOLD ED (M.S.)
- ✓ coolant Low
- X coolant fill not mounted
- ✓ Radiator cap missing
- ✓ staying in Low ride
- ✓ L/Front hub cap cover missing
- ✓ Air Leak
- X oil from Air dryer
- X Battery water Low
- ✓ need to steam clean for oil Leaks
- X L/Front caliper won't Adjust
- X No Spare tire

✓ EVAP MOTOR

138.00

D



FSC
Mixed Sources
Product group from well-managed
forests, controlled sources and
recycled wood or fiber
Cert No. SW-COC-004131
www.fsc.org
© 1996 Forest Stewardship Council

80000 SERIES
30% P.C.W.

**Stephen Connolly**

| | |
|---|---|
| **From:** | Bob Hazel <BobH@dattco.com> |
| **Sent:** | Thursday, July 28, 2011 10:41 AM |
| **To:** | sconnolly@limoliner.com |
| **Cc:** | Ed Corr; JerryTaglieri |
| **Subject:** | FW: limo liner |

Steve, This is what has been done to get it up and running. Work still to be done as follows.

- Charge and run A/C, shim clutch, check again for leaks. One major leak has been repaired already. This will be done today.
- Trying to find 110 v inverter to replace one that looks burned out from what your guys are telling us. Get you the best price possible. Test run and check for engine warning lights as per your guys. Possible turbo boost problem?

Ed and Jerry will adjust the hours we have into this job as needed. You will not be charged for the 62.2 that we are showing on our time sheets.

**From:** Ed Corr
**Sent:** Thursday, July 28, 2011 10:16 AM
**To:** Bob Hazel
**Subject:** limo liner


Bob work done as follows

1 installed blower and figure wire connections
2 repaired ingition wireing-not the correct switch had to figure out wireing
3 vehical not charging at all removed both alternatiors installed new alternators
4 had to repair some wireing to alternators
5 had to replave oil return line to main alternator
6 atempt to trace 110v wireing
7 replaced l/f hub cap (oil filled )
8 working on a/c
9 battries keep going dead (always have to charge
10 toped coolant
11 inspected and repaired oil leak (was return line from alternator
Most of the time was spent with wire repairs and testing .the vehical was in worse shape than everyone thought .



Dattco
Sales&Service
Edward A Corr
Shop Forman
86 york avenue
Randolph ma 02368
shop-781-986-8305 ext.743
cell-617-699-9993
fax-781-963-9016
E-mail edc@dattco.com

E

August 8 2011

DATTCO Sales and Service
86 York Avenue
Randolph, MA 02368

**By Hand**

<div align="center"><strong>Without Prejudice re: LimoLiner 3001</strong></div>

Dear Sirs:

On May 31 2011 the above vehicle was brought to your facility in Randolph MA.

You were provided with a list of repairs we had identified as necessary and agreed to carry them out. You advised that the work required would take your specialist mechanics approximately 40 hours to complete, in addition to the cost of required spare parts. We also understood that we would be advised of any additional work required to return the vehicle fit for service. Our reasonable expectation was the return of the vehicle within 2-3 weeks at the most.

During the 56 days up to July 29, 2011 work on the vehicle was carried out on only **16 days** and for a total of only 73.6 hours in that period. On three occasions during that 56 day period you advised me that the Liner would be "ready tomorrow". Yet, for example, as late as August 5 you were "researching an inverter" an item you had been alerted to at the outset.

On August 4, along with Mr. F. McCann, owner of LimoLiner Inc., I met with your management. At that meeting you gave no acceptable explanation of your breach of contract whereby you had failed to carry out the required repairs. In fact it was clear that the level of attention, time and resources assigned to the job were so limited that there was no possibility of the work being done in anything close to a reasonable time.

At that meeting you were reminded that the Liner in question was required for daily service; the revenue lost on just five round trips Boston to New York averages $14,000 per week. At that meeting you were asked and given 24 hours to respond:

- What will you do to ensure the vehicle will be returned fit for service without delay?

- How will you compensate LimoLiner for the damage sustained as a result of your failure above?

To date no answers have been given to these questions.

On August 5, 2011 I asked you by what date the work would be completed and were you capable of doing it. You indicated you "can get it done". But just another list of things "to do". Things you should have identified 8 weeks ago!

LimoLiner is prepared to settle this matter as follows:

1. DATTCO Inc., which represented itself as a qualified expert coach repairer, will deliver the vehicle fit for service by 5pm on Friday August 12.

2. You will bill LimoLiner for the estimated 40 hours plus the cost of parts for the work initially identified, plus labor and parts for additional necessary work not listed that was required.

3. We will pay this bill in full in 30 days, provided there is no failure or breakdown on any mechanical or electrical feature of the vehicle which should have been identified and repaired per this contract.

4. Prior to that time you will compensate LimoLiner for a portion of its loss of revenue, namely 3 weeks of loss of use, $42,000. The actual loss of revenue (aside from indirect loss due to a reduced schedule, compensation to passengers and other costs) is approximately $126,000.

If you are not prepared to settle this matter as proposed, note that our offer is made without prejudice to any legal claim that we may pursue which will not be limited to the amounts above.

Kindly respond as a matter of urgency so that this issue can hopefully be settled in a businesslike way without the need for litigation.

Sincerely,


Stephen Connolly
General Manager

cc:    Robert Stetson, Esquire, Boyle, Shaughnessy & Campo, PC, Boston, MA
       File

F

**From:** Bob Hazel [mailto:BobH@dattco.com]
**Sent:** Monday, August 08, 2011 9:03 AM
**To:** Stephen Connolly
**Subject:** RE:

Steve, Yes we can get it done. Once again the problem we are having is everything we touch seems to cause another problem. As of today the A/C system should be ok. We cannot test it until we solve the 24volt charging problem. We are now into the third alternator??? Ed is working on that problem right now.

# Bob

**Bob Hazel**
**Dattco Sales & Service**
**86 York Avenue**
**Randolph, Ma 02368**
**617-828-3094 (c)**
**781-986-8305**
**781-963-9016 (fax)**

**From:** Stephen Connolly [mailto:sconnolly@limoliner.com]
**Sent:** Friday, August 05, 2011 2:57 PM
**To:** Bob Hazel
**Subject:** RE:

Bob, regarding the two requests from yesterday's meeting. Firstly what's the time line for the completion of the Job?  Is Dattco truly capable of repairing this MCI vehicle to our satisfaction?

Stephen Connolly
LimoLiner, Inc.
General Manager
100 Wales Avenue
Avon, MA 02322
P-508.436.7425  x104

8/8/2011

F-508.436.7431

 www.limoliner.com

**From:** Bob Hazel [mailto:BobH@dattco.com]
**Sent:** Friday, August 05, 2011 8:21 AM
**To:** Stephen Connolly
**Subject:**

Steve, Latest update 8/5/2011, 8:16 AM: Thermo King has ordered 2 switches for A/C I do not expect them here today. We have worked on the bus all day and all last nite. It is running but not charging enough. We have ordered a regulator should be here today. Fleet Electrical is researching the inverter we are supposed to hear back from them today. Like I said yesterday every time you correct one problem another pops up. How long was this bus sitting before we got it?

# Bob

**Bob Hazel**
**Dattco Sales & Service**
**86 York Avenue**
**Randolph, Ma 02368**
**617-828-3094 (c)**
**781-986-8305**
**781-963-9016 (fax)**

Note. This message is intended exclusively for the individual(s) to whom it is addressed and may contain information that is privileged, or confidential. If you are not the addressee, you must not read, use or disclose the contents of this e-mail. If you receive this e-mail in error, please advise us immediately and delete the e-mail. DATTCO, Inc. has taken every reasonable precaution to ensure that any attachment to this e-mail has been swept for viruses. However, DATTCO, Inc. cannot accept liability for any damage sustained as a result of software viruses and would advise that you carry out your own virus checks before opening any attachment. Thank you.

Note. This message is intended exclusively for the individual(s) to whom it is addressed and may contain information that is privileged, or confidential. If you are not the addressee, you must not read, use or disclose the contents of this e-mail. If you receive this e-mail in error, please advise us immediately and delete the e-mail. DATTCO, Inc. has taken every reasonable precaution to ensure that any attachment to this e-mail has been swept for viruses. However, DATTCO, Inc. cannot accept liability for any damage sustained as a result of software viruses and would advise that you carry out your own virus checks before opening any attachment. Thank you.

8/8/2011

G

P. 001/002



**DATTCO**

583 South Street, New Britain, CT 06051 800.229.4879 www.DATTCO.com

## Our buses. Our people & You.

---

### FAX TRANSMITTAL SHEET

| TO: Fergus McCann | FROM: RANDOLPH, MA LOCATION 781-786-8305 |
| COMPANY: | BOB HAZEL |
| Limolines | DATE: 8/25/11 |
| FAX NUMBER: 508-436-7431 | TOTAL NO. OF PAGES INCLUDING COVER: 2 |
| PHONE NUMBER: | RE: Coach 3001 |

---

☐ URGENT    ☐ FOR REVIEW    ☐ PLEASE COMMENT    ☐ PLEASE REPLY    ☐ PLEASE RECYCLE

NOTES/COMMENTS: (DATTCO RETURN FAX 781-963-9011)

Coach 3001 is ready to be picked up per the attached invoice. Acceptable form of payment will be by <u>Bank Check</u> only. Please give us 2 hours notice to have the vehicle up and running for you.

Activity Transport
**MotorCoach**
Executive Coach/VP
Sales & Service
School Bus
Tour & Travel

9:06 26 2011

Aug 30 2011 6:58PM   Firstgreen                    7814499714                    P.2

P. 002/002

# DATTCO

**Invoice**

| | |
|---|---|
| Invoice No | 3 |
| Invoice Date | 8/25/2011 |
| Terms of Trade | COD |
| Client ID | 0000100119 |

86 York Ave
Randolph, MA
02368

Tel No: 781-986-8305
Fax No: 781-963-9016

LIMOLINER, INC
*100 Wales Ave:*
*Avon, MA*

| | | | | |
|---|---|---|---|---|
| License No | 17396 | Registered | | |
| Make | MCI | Model | TRANSIT |
| VIN | 1M8TRPYAX2P061828 | Engine No | UNIT 3001 |

| | | | |
|---|---|---|---|
| Activity ID | U 179598 | Order No | |
| Activity Date | 6/8/2011 to 8/23/2011 | Distance | 135052 |

| Activity Title | STANDARD REPAIR |
|---|---|

| Quantity | Description | Unit Price | Price | Tax % | Tax | Total |
|---|---|---|---|---|---|---|
| 1 | repair coach to run & repair a/c system | $0.00 | $0.00 | 0 | $0.00 | $0.00 |
| | Notes: | | | | | |
| | noninv= | | | | | |
| | cable and lugs for battery cable replacement. | | | | | |
| | repair= | | | | | |
| | sub repair for air conditioning. | | | | | |
| | t/k sub - electric repair a-1 | | | | | |

**Parts**

| | | | | | | |
|---|---|---|---|---|---|---|
| 1 | BELT/ALT/DL3/NEW same as 23521000 | $58.17 | $58.17 | 6.25 | $3.84 | $61.81 |
| 1 | HUB CAP | $37.71 | $37.71 | 6.25 | $2.36 | $40.07 |
| 1 | BELT | $56.35 | $56.35 | 6.25 | $3.52 | $59.87 |
| 50 | SHOP LABOR | $85.00 | $4,250.00 | 0 | $0.00 | $4,250.00 |
| 1 | NON INVENTORY | $85.00 | $65.00 | 6.25 | $4.06 | $69.06 |
| 1 | ALTERNATOR.REMAN 24V 50DN 270 | $1,657.72 | $1,657.72 | 6.25 | $103.61 | $1,761.33 |
| 1 | ALTERNATOR | $800.62 | $800.62 | 6.25 | $37.54 | $838.16 |
| 1 | RADIATOR CAP 10 LB | $6.00 | $6.00 | 6.25 | $0.38 | $6.38 |
| 1 | serpentine belt | $32.55 | $32.55 | 6.25 | $2.03 | $34.58 |
| 1 | HOSES MADE LOCALLY | $181.72 | $181.72 | 6.25 | $11.36 | $193.08 |
| 2 | fitting | $8.26 | $18.52 | 6.25 | $1.16 | $19.68 |
| 1 | COIL-VALVE, SOLENOID 24 VDC | $59.72 | $59.72 | 6.25 | $3.73 | $63.45 |
| 1 | SHIPPING/HANDLING | $129.15 | $129.15 | 6.25 | $8.07 | $137.22 |
| 1 | A/C REPAIR-TK BOSTON | $1,847.85 | $1,847.85 | 6.25 | $115.49 | $1,963.34 |
| 1 | SUBLET WORK PERFORMED | $495.00 | $495.00 | 6.25 | $30.94 | $525.94 |
| 1 | KIT- REPAIR FOR A/C | $107.31 | $107.31 | 6.25 | $6.71 | $114.02 |
| 1 | voltage regulator | $170.31 | $170.31 | 6.25 | $10.64 | $180.95 |
| 3 | THERMISTOR - AMBIENT | $68.02 | $204.06 | 6.25 | $12.75 | $216.81 |
| 1 | GAUGE ASSY (OIL DIPSTICK) | $34.85 | $34.85 | 6.25 | $2.18 | $37.03 |
| 1 | ALTERNATOR BELT (LARGE) | $29.38 | $29.38 | 6.25 | $1.84 | $31.22 |
| Invoice Totals | | | $10,041.99 | | $362.01 | $10,404.00 |

Distinctive Systems VMS   Printed: 8/25/2011 9:23:46 AM

H

F

JAMES L. RUDOLPH
ROBERT H. SHAER
JONATHON D. FRIEDMANN
MICHAEL G. TRACY
ANTHONY L. LECCESE
JAMES S. SINGER
JOSEPH W. WORTHEN II**
JOHN H. ROGERS
WILLIAM A. KORMAN**
JOHN D. MOORMAN
NICOLE M. GIARDINA
RICHARD M. MUCCI
ZACHARY J. TUCK
ASHLEY M. GREEN
Of Counsel
GARY E. LAMBERT†
HERBERT WEINBERG
HERBERT D. FRIEDMAN
JARED W. STANSFIELD
BRYAN S. MACCORMACK* **
ROBERT E. CURTIS, JR.
† Registered Patent Attorney
**Admitted in New Hampshire
*Admitted in Florida

## RUDOLPH FRIEDMANN LLP

COUNSELLORS AT LAW

92 STATE STREET

BOSTON, MASSACHUSETTS 02109

———

(617) 723-7700
Telecopier: (617) 227-0313

OLIVER'S POND
216 HUMPHREY STREET
MARBLEHEAD, MA 01946
(781) 639-4600

To Contact Writer:
Voice Mail Ext. 164
Email: jsinger@RFlawyers.com

September 1, 2011

**VIA EMAIL AND FIRST-CLASS MAIL**

Bruce Gray
Dattco, Inc.
583 South Street
New Britain, CT  06051

     RE:   **LimoLiner Inc.**

Dear Mr. Gray:

Please be advised that the undersigned and the law firm of Rudolph Friedmann LLP represent LimoLiner Inc. ("LimoLiner").

I understand that on May 31, 2011, LimoLiner caused one of LimoLiner's vehicles identified as Liner No. 3001, License No. 17396 (the "Liner") to be towed to Dattco Commonwealth Inc.'s ("Dattco") facility in Randolph, Massachusetts, for certain repairs as outlined by LimoLiner. These repairs were principally electrical in nature – other work had been done in-house by LimoLiner personnel on the vehicle, which had been out of service for some time and was urgently needed for Summer service. LimoLiner relied on Dattco's professed expertise in complex electrical work and *expected at that time* that Dattco would know whether the inverter for the Liner required repair or replacement.

A list of non-functioning items, requiring attention by repair or replacement was provided to Dattco. At the outset, Dattco represented to LimoLiner that it would take approximately 40 man-hours to complete these repairs. It was expected that if additional repairs were required, Dattco would contact LimoLiner before proceeding with such additional work, at which time the cost and timetable would be disclosed and authority given by LimoLiner to proceed with any such additional work.

Dattco was made fully aware that time was of the essence regarding repairs because every day a Liner needed for service is off the road results in lost revenues for LimoLiner. I understand that Dattco has mechanics working around-the-clock, so LimoLiner reasonably anticipated that the Liner would be repaired within a two (2) week period. It was later discovered that Dattco did not even begin to work on the Liner until June 9, 2011, some nine (9)

Bruce Gray
September 1, 2011
Page 2

days after it was delivered. Moreover, upon review of Dattco's Job Card, there were many, many days when no work was performed on the Liner.

Notwithstanding LimoLiner's numerous communications with Dattco in order to expedite Dattco's completion of the repairs (and Dattco's promises during the following 12 weeks of "completion tomorrow"), on August 25, 2011, some 86 days after Dattco had possession of the Liner, LimoLiner was notified that (a) the vehicle was ready to be picked up as presumably it had finally been repaired[1], and (b) upon payment of $10,404.00 by bank check, LimoLiner could pick up the Liner.

At this point, LimoLiner has been without its vehicle for three (3) months, which has caused a substantial loss in its operating revenues. LimoLiner still does not know if the vehicle is fit for service[2].

In order to attempt to facilitate a resolution of the outstanding dispute between LimoLiner and Dattco, and avoid the possibility of prolonged and expensive litigation (which would likely include a claim by LimoLiner pursuant to G.L. c. 93A for double or treble damages), LimoLiner proposes the following:

1. LimoLiner will deposit $10,404.00 in my law firm's client's funds account to be held *in escrow* until an agreement by the parties or court order (or a final decision of an arbitrator, if the parties cannot reach a settlement and have agreed to arbitration);

2. Upon receiving confirmation of said deposit of the $10,404.00 in escrow, Dattco shall release the Liner to LimoLiner;

3. After the deposit of the funds and the release of the Liner, the parties, with counsel, shall meet to attempt in good faith to resolve their disputes;

4. If a meeting of the parties and counsel is unsuccessful, the parties agree to select a mutually-acceptable mediator, the cost to be shared equally, in order to attempt to reach a settlement with the assistance of the mediator; and

5. If the parties are unable to reach a settlement at mediation, then, with the mediator's assistance, they can decide to arbitrate their dispute or proceed with litigation.

As you know, after many attempts by LimoLiner's owner, Mr. Fergus McCann, to obtain a response to the questions of August 4th and August 8th from Dattco management, a meeting

---

[1] Obviously, LimoLiner cannot confirm at this time whether or not Dattco adequately completed all the work; however, it is clear from the invoice sent that the inverter was not replaced, as Dattco now asserts LimoLiner told a supplier to cancel Dattco's order for that unit. This assertion is groundless. Mr Connolly assisted Dattco in sourcing the required unit. He identified this supplier from whom he had recently obtained a unit for another liner – a Prevost. The order for that unit was cancelled as the work was done by Prevost, the vehicle manufacturer, not LimoLiner in-house. "Fit for service" clearly requires a functioning inverter, which as you know is needed for onboard power to the facilities in the cabins.

[2] At a meeting held between LimoLiner's owner and general manager and your company on August 4, 2011, which was followed up by a letter dated August 8, 2011, that very question was asked: What would Dattco do to ensure the vehicle will be returned fit for service without delay. LimoLiner also inquired as to how LimoLiner would be compensated for its damages. Neither inquiry was ever appropriately addressed.

Bruce Gray
September 1, 2011
Page 3

was eventually scheduled with you on Tuesday, August 23, 2011.  At the last minute, Dattco cancelled the meeting.  Based upon your email of August 30, 2011, LimoLiner requests that counsel be present at any meeting, provided the Liner is returned to LimoLiner per Paragraphs Nos. 1 and 2 above.

I believe that the approach outlined above is fair and reasonable to both parties.  Dattco will have the security of knowing funds are available to pay Dattco for the repairs, whether by settlement or, if appropriate, a court or an arbitrator's decision.

I will diary this matter ahead for three (3) business days.  If I do not receive a response within that time, LimoLiner will have no alternative but to seek judicial relief.

Sincerely,

James S. Singer

/skv
cc:     LimoLiner, Inc. (via email)
        Donald A. DeVivo, President, Dattco, Inc.

## Singer, Jim

| | |
|---|---|
| **From:** | Bruce Gray [bruceg@dattco.com] |
| **Sent:** | Wednesday, September 14, 2011 4:11 PM |
| **To:** | Singer, Jim |
| **Cc:** | Bruce Gray; Donald DeVivo; Bryan Miller; Bob Hazel; JerryTaglieri |
| **Subject:** | Limoliner |
| **Attachments:** | LIMOLINER3001ELEC9_13_11Estimate.pdf |

James Singer
92 State Street
Boston, MA 02109

Ref: Limoliner

Please find attached the estimate for the additional repairs as were described during our meeting of 9/12/2011. The estimate includes those items needed to bring the unit to operable condition. It encompasses replacement of the batteries, purchase and installation of the 110 volt inverter, accompanying wiring and harness replacement or repair, and related items. Please note as indicated on the estimate, the procurement for the "custom built" inverter would take approximately 2-3 weeks from the time of placing an order.

It does not include; repairs to the coach body, instrumentation (dash and controls), nor those items that would be required to meet State or Federal inspection standards. These concerns were going to be completed by Mr. McCann's own personnel.

We have considered/ evaluated your offer to resolve the current outstanding repair billings. We understand the methodology and your position related to the retention of funds, but at this time Dattco is unwilling to enter into an escrow agreement for the invoicing. Due the current strained relationship between our companies, Dattco requests reimbursement for the Labor and Material already committed to this project. Costs for any additional repairs would have to be negotiated prior to Dattco committing any resources.

Both our companies would like to find the means to restart the relationship with a clean slate, and as such it is our request to resolve this current billing before continuing to conduct business with Limoliner. It is our hope to resolve this dispute in a timely fashion. We are willing to meet as necessary to work thorough the problem. Please contact myself or Mr. Hazel to establish dates and times.

Sincerely,

Bruce Gray
AVP Dattco Sales and Service
583 South Street
New Britain, CT 06051
860.229.4878 x 783

Cc Don DeVivio
    Bryan Miller
    file

# DATTCO SALES AND SERVICE
86 YORK AVE.
RANDOLPH, MA, 02368
Tel: 781-986-8305 Fax: 781-963-9016
bobh@dattco.com

## *Estimate*

**Estimate Prepared by:** BOB HAZEL
Accident Date:
Date of Loss:
Arrival Date:
Type of Loss:
Policy Number:
Claim Number:

**Appraised for:**

Date: 9/14/2011
Estimate#: 3001 ELECTRICAL

**Owner:**

Company: LIMOLINER
Contact: FERGUS MCCANN
Address: 100 WALES AVE.
City, State, Zip Code: AVON, MA  02322
Telephone, Fax: 508-436-7425, 508-436-7431

| Year | Make | Model | Color | Trim |
|------|------|-------|-------|------|
| 2003 | MCI | COACH | GRAY | |

| Unit Number | License Plate # | Mileage | Serial#/VIN# |
|-------------|-----------------|---------|--------------|
| 3001 | BU17396 | 135,052 | 1M8TRPYAX2P061828 |

| Sup Seq | Labor Type | Labor Op | Description | Part Type | Part Number | Dollar Amount | Labor Units |
|---------|-----------|----------|-------------|-----------|-------------|---------------|-------------|
| 1 | Mech | Rem/Rep | 8D TYPE BATTERIES 2 @ $246.86 | New | | $493.72 | T 4.0* |
| 2 | Mech | Rem/Rep | TYPE 31 1010CCA BATTERIES 8 @ $119.83 | New | | $958.64 | T 32.0* |
| 3 | Mech | Rem/Rep | 110V MOTORCOACH INVERTER | New | | $5,200.00 | T 8.0* |
| 4 | Mech | Repair | TROUBLE SHOOT ALL 110 VOLT WIRING CIRCUITS ATTACHED TO INVERTER TO GET COACH ROADWORTHY FOR DELIVERY TO CUSTOMER | Exist | | | T 24.0* |
| 5 | Mech | Repair | TRACE ALL DISCONNECTED WIRES AND ACCESSORIES THIS WILL HAVE TO BE DONE WIRE BY WIRE (LABOR INTENSIVE) | Exist | | | T * |
| 6 | Mech | Repair | RECONNECT ACCESSORIES AND TEST INDIVIDUALLY | Exist | | | T * |

Version          2.0
Database Edition  PHT 10-02

TruckEst is a Trademark of Mitchell International
©1998-2011 Mitchell International, Inc.
All Rights Reserved.

Page    1    of   3

| Sup Seq | Labor Type | Labor Op | Description | Part Type | Part Number | Dollar Amount | Labor Units |
|---|---|---|---|---|---|---|---|
| 7 Mech | Repair | PERFORM FINAL TEST AND RUN-UP TO DETERMINE IF ALL SYSTEMS ARE ON BOARD | Exist | | | T | * |
| 8 Mech | Repair | CHECK WIRING TO DASH SYSTEMS TO DETERMINE IF THERE ARE ANY OTHER AREAS OF SHORT CICUITS OR BURNED WIRING AND REPORT TO CUSTOMER | Exist | | | T | * |
| 9 | | Shop Materials | | | $75.00 | T | * |
| 10 | | PLEASE NOTE: COACH TYPE INVERTER MUST BE BUILT TO ORDER APPROX. 3 WEEK LEAD TIME | | | | | * |

\* - Judgement Item
\# - Labor Note Applies

## Labor

| Mechanical | 68.0 | Hrs @ | $110.00 | $7,480.00 |
|---|---|---|---|---|
| Labor Total | | | | $7,480.00 |

## Parts

| Parts Subtotal | $6,652.36 |
|---|---|
| Less Adjustments | |
| Parts Total | $6,652.36 |

## Additional Costs and Operations

### Additional Costs

| Shop Materials | $75.00 |
|---|---|
| Addl. Costs/Ops Total | $75.00 |

## Tax

| Parts Tax | @ | 6.25% | $415.77 |
|---|---|---|---|
| Addl. Costs Tax | @ | 6.25% | $4.69 |
| Tax Total | | | $420.46 |

## Totals

| Sub Total: | $14,627.82 |
|---|---|
| Customer Resp. | $0.00 |
| **Net Total** | **$14,627.82** |

2003 MCI COACH

Version          2.0
Database Edition  PHT 10-02

TruckEst is a Trademark of Mitchell International
©1998-2011 Mitchell International, Inc.
All Rights Reserved.

Page    2    of  3

| Sup Seq | Labor Type | Labor Op | Description | Part Type | Part Number | Dollar Amount | Labor Units |
|---------|-----------|----------|-------------|-----------|-------------|---------------|-------------|
|         |           |          |             |           |             |               |             |

**Estimate Prepared By:**

_____
Signature                                   Date

**Authorization for Repairs:**

_____
Signature                                   Date

The above is an estimate based on our inspection and does not cover any additional parts or labor which may be required after the work has started. Occasionally, worn or damaged parts are discovered which may not be evident on the first inspection. Because of this, the above prices are not guaranteed. Quotations on parts and labor are current and subject to change.

*TruckEst does not automatically include items required by many business repair partners. This application allows the author to manually enter line items such as overlap deductions.*

2003 MCI COACH

COMMONWEALTH OF MASSACHUSETTS

NORFOLK, SS.                         SUPERIOR COURT DEPARTMENT
                                    CIVIL ACTION NO.

| | |
|---|---|
| LIMOLINER INC., <br>       Plaintiff, | ) <br> ) <br> ) |
| vs. | ) <br> ) |
| DATTCO, INC., <br>       Defendant. | ) <br> ) <br> ) |

## PLAINTIFF'S EMERGENCY MOTION FOR REDELIVERY OF VEHICLE AND PRELIMINARY RELIEF

The Plaintiff LimoLiner Inc. hereby moves this Honorable Court pursuant to Mass. R. Civ. P. 65.2, and G.L. c. 214, § 3(1) for an order requiring the Defendant Dattco, Inc. to release and redeliver to the Plaintiff its 2004 MCI E4500 motorcoach, No. 3001, VIN #IM8TRYAX2P061828 (hereinafter "Liner 3001") which the Defendant has in its possession and refuses to return.

The Defendant claims it is owed $10,404 for its repairs to Liner 3001, which the Plaintiff disputes. The Plaintiff has offered to deposit said $10,404 in escrow pending the resolution of the parties' dispute (along with a proposed dispute resolution mechanism), but the Defendant has refused Plaintiff's offer, instead seeking to hold Liner 3001 hostage in exchange for payment in-hand to the Defendant.

The Plaintiff brings this Motion on an emergency basis as it is necessary for the Plaintiff to obtain possession and use of Liner 3001 as soon as possible in order to appropriately conduct its business and to mitigate its damages.

The Plaintiff relies upon the <u>Verified Complaint</u> and the <u>Memorandum in Support of Plaintiff's Request for Preliminary Relief</u> in support of this Motion.

WHEREFORE, the Plaintiff, LimoLiner, Inc., requests that upon the Plaintiff's deposit of $10,404 with the Clerk's office, or with its counsel in escrow in its client funds account, the Defendant Dattco, Inc. be ordered to forthwith release and return Plaintiff's Liner 3001 to Plaintiff's facilities at 100 Wales Avenue, Avon, Massachusetts, all subject to further order of the Court.

Respectfully submitted,
LimoLiner, Inc.,
Plaintiff,
By its attorneys,

James S. Singer
BBO # 464560
Zachary J. Tuck
BBO # 666761
RUDOLPH FRIEDMANN LLP
92 State Street
Boston, MA 02109
(617) 723-7700
jsinger@rflawyers.com
ztuck@rflawyers.com

Date:   October 7, 2011

COMMONWEALTH OF MASSACHUSETTS

NORFOLK, SS.                          SUPERIOR COURT DEPARTMENT
                                     CIVIL ACTION NO.

| | |
|---|---|
| LIMOLINER INC.,<br>          Plaintiff, | ) |
| | ) |
| | ) |
| vs. | ) |
| | ) |
| DATTCO, INC.,<br>          Defendant. | ) |
| | ) |
| | ) |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S EMERGENCY MOTION FOR REDELIVERY OF VEHICLE AND PRELIMINARY RELIEF

### Introduction

The Plaintiff LimoLiner, Inc. ("LimoLiner") is a luxury transportation company which provides scheduled trips between Boston and New York City up to five times daily. The Defendant Dattco, Inc. ("Dattco") is an automotive repair shop which contracted with the Plaintiff to perform certain repairs to one of the Plaintiff's luxury Liners. The Defendant breached the contract to repair the vehicle in a timely manner and failed to perform the work it agreed to do. However, the Defendant has further refused to release the Liner back to the Plaintiff unless the Plaintiff pays the Defendant the amount of $10,404.00. The Plaintiff disputes that such amount is due. The Plaintiff brings the present motion to order the release of the Liner upon payment of $10,404.00 into the Court or in escrow pending the resolution of this dispute.

### Legal Standard

Mass. R. Civ. P. 65.2 regarding redelivery of goods refers to the provisions of Mass. R. Civ. P. 65.  The standard for the issuance of a preliminary injunction is also well

established in the Commonwealth by a long line of cases. To succeed in an action for a preliminary injunction, a plaintiff must show: (1) a likelihood of success on the merits; (2) that irreparable harm will result from the denial of the injunction; and (3) that, in light of the plaintiff's likelihood of success on the merits, the risk of irreparable harm of the plaintiff outweighs the potential harm to the defendant in granting the injunction. Tri-Nel Management, Inc. v. Board of Health of Barnstable, 741 N.E. 2d 37 (2001); See, Wilson v. Commissioner of Transitional Assistance, 441 Mass. 846 (2004); See also, Siemens Bldg. Technologies, Inc. v. Division of Capital Asset Management, 439 Mass. 759 (2003). "When asked to grant a preliminary injunction, the judge initially evaluates in combination the moving party's claim of injury and chance of success on the merits. If the judge is convinced that failure to issue the injunction would subject the moving party to a substantial risk of irreparable harm, the judge must then balance this risk against any similar risk of irreparable harm which granting the injunction would create for the opposing party. What matters as to each party is not the raw amount of irreparable harm the party might conceivably suffer, but rather the risk of such harm in light of the party's chance of success on the merits." Packaging Industries Group, Inc. v. Cheney, 380 Mass. 609, 617 (1980).

The Superior Court has special equity jurisdiction over this type of matter pursuant to G.L. c. 214, § 3(1), which grants the Superior Court original and concurrent jurisdiction over actions to compel the redelivery of goods or chattels taken or detained from the owner. Despite having breached the contract and having caused damage to LimoLiner as a result, Dattco has failed and/or refused to release the vehicle back to LimoLiner until its bill for $10,404.00 is paid. Although Dattco has not formally asserted

a garageman's lien in accordance with G.L. c. 255, § 25, Dattco has refused to release the vehicle. By way of the present motion, the Plaintiff seeks an order from the Court to compel the redelivery of its Liner which has been detained from LimoLiner by the Defendant upon the Plaintiff depositing the amount the Defendant claims is due for repair, namely $10,404.00, with the Court or in escrow with its counsel, or jointly with Defendant's counsel.

### Plaintiff Has a High Likelihood of Success on the Merits Given Defendant's Breach of the Contract

Here, the Plaintiff most certainly has an extremely high likelihood of success on the merits of this action. As set forth in greater detail in the <u>Verified Complaint</u> signed by Fergus McCann, President of LimoLiner, the Defendant Dattco breached the contract and made representations regarding the repair of the vehicle at issue in a timely manner and failed to perform the work it agreed to do. Although the <u>Verified Complaint</u> provides greater detail as to the facts at issue, a brief description of the facts is set forth below.

On May 31, 2011, LimoLiner caused one of LimoLiner's vehicles identified as Liner No. 3001, License No. 17396 (the "Liner") to be towed to Dattco's facility in Randolph, Massachusetts, for certain repairs as outlined by LimoLiner. These repairs were principally electrical in nature – other work would be done in-house by LimoLiner personnel on the vehicle, which had been out of service for a period of time and was urgently needed for summer service. LimoLiner relied on Dattco's professed expertise in complex electrical work and expected at that time that the inverter for the Liner would be repaired or replaced by Dattco as the parties specifically discussed the need to repair or replace the inverter before LimoLiner engaged Dattco.

3

A list of non-functioning items, requiring attention by repair or replacement was provided by Dattco, approximately nine (9) days after Dattco took possession of the Liner[1]. At the outset, Dattco represented to LimoLiner that it would take approximately 40 man-hours to complete these repairs which the parties had agreed upon. It was expected that if additional repairs were required, Dattco would contact LimoLiner before proceeding with such additional work, at which time the cost and timetable would be disclosed and authority given by LimoLiner to proceed with any such additional work. Dattco was made fully aware that time was of the essence regarding repairs because every day a Liner needed for service is off the road results in lost revenues for LimoLiner. Dattco represented that it has mechanics working around-the-clock, so LimoLiner reasonably anticipated that the Liner would be repaired within a two (2) week period. However, as set forth above, it was later discovered that Dattco did not even begin to work on the Liner until June 9, 2011 (and that was for estimating purposes), some nine (9) days after it was delivered. Moreover, upon review of Dattco's repair records, there were many, many days when no work was performed on the Liner, and had several different mechanics working on the vehicle (the qualifications of whom the Plaintiff questions). So there was no continuity by Dattco in its performance of repairs.

Notwithstanding LimoLiner's numerous communications with Dattco in order to expedite Dattco's completion of the repairs (and Dattco's promises during the following 12 weeks of "completion tomorrow"), on August 25, 2011, some 87days after Dattco had possession of the Liner, LimoLiner was notified that (a) the vehicle was ready to be

---

[1] Notwithstanding LimoLiner's unequivocal direction to Dattco that LimoLiner needed the vehicle as soon as possible, and Dattco's representation that business was slow and it would attend to the vehicle as soon as possible, according to Dattco's records it did not even begin a review of the Liner for estimating purposes until nine (9) days after it was towed to Dattco's facility.

picked up as presumably it had finally been repaired, and (b) upon payment of

$10,404.00 by bank check, LimoLiner could pick up the Liner. At this point, LimoLiner

had been without its vehicle for approximately three (3) months.  LimoLiner still does not

know if the vehicle is fit for service. However it is clear from the invoice sent by Dattco

that the inverter in the vehicle has not been replaced, which is necessary in order for the

onboard power to the facilities in the cabins. Despite the fact that Dattco did not complete

the required repairs, and did not perform the repairs in an adequate timeframe (thereby

causing substantial damage to LimoLiner), Dattco has refused to release the vehicle back

to LimoLiner until its invoice is paid. As a result, LimoLiner has filed the present motion

to release the vehicle, while the disputed sum is placed in escrow.  It is also important to

note that the invoice submitted to LimoLiner said, "repair coach to run," but

approximately three (3) weeks later Dattco submitted a $14,627.82 estimate to make the

unit "operable."  (The Plaintiff does not know the difference between a vehicle being

"repaired coach to run" as opposed to making it "operable.")

Given the facts as set forth above and in the <u>Verified Complaint</u>, it is clear that

Dattco has breached the contract it had with LimoLiner, that it is not entitled to retain

possession of the vehicle, and that LimoLiner has a high likelihood of success in this

action.

### Plaintiff Continues to Suffer Irreparable Harm
### While Defendant Retains Possession of the Vehicle

As a result of the actions of the Defendant, the Plaintiff has suffered, and will

continue to suffer, irreparable harm to its business. With the Liner being out for service

for such an extended period of time, LimoLiner has not had enough vehicles in its fleet to

provide an optimal travel schedule for its customers. The loss of use of the Liner has

resulted in a major reduction of the number of trips that the Plaintiff can operate each week. The Liner alone would have made five (5) or six (6) round trips per week if it was available during that period. With a reduced schedule offering fewer options, there has been a large reduction in passenger bookings. In addition, the shortage of vehicles has meant that when another liner went out for service there was no replacement available. Also, the other Liners were overused, resulting in increased repair costs and lack of flexibility. As a result, LimoLiner has had to charter inferior motorcoaches in order to meet its customers' needs. In fact, the Plaintiff has been forced to provide refunds to certain affected passengers as a result of not having the use of its own Liner. The lack of travel options for its customers, along with its forced use of an inferior coach, have consequently resulted in a diminution of LimoLiner's reputation, and have caused the company to lose both potential new customers and repeat business.

### *Proposed Escrow Account*

Although the Plaintiff has suffered and will continue to suffer damage while the Liner is held by the Defendant, the Plaintiff has taken steps to ensure that the Defendant's interest is protected even if it is found to be rightfully owed the $10,404.00 the Defendant claims is due. In a demand letter sent by Plaintiff's counsel on September 1, 2011 (see Verified Complaint, Exhibit H), the Plaintiff's counsel made the following proposal to the Defendant:

1. LimoLiner will deposit $10,404.00 in my law firm's client's funds account to be held *in escrow* until an agreement by the parties or court order (or a final decision of an arbitrator, if the parties cannot reach a settlement and have agreed to arbitration);

2. Upon receiving confirmation of said deposit of the $10,404.00 in escrow, Dattco shall release the Liner to LimoLiner;

3. After the deposit of the funds and the release of the Liner, the parties, with counsel, shall meet to attempt in good faith to resolve their disputes;

4. If a meeting of the parties and counsel is unsuccessful, the parties agree to select a mutually-acceptable mediator, the cost to be shared equally, in order to attempt to reach a settlement with the assistance of the mediator; and

5. If the parties are unable to reach a settlement at mediation, then, with the mediator's assistance, they can decide to arbitrate their dispute or proceed with litigation.

The Defendant rejected the proposal. By way of this motion, the Plaintiff requests that the Court to enter an order in accordance with this proposal as offered to Dattco as to the escrow arrangement, or in the alternative the Plaintiff can deposit the $10,404.00 with the Court. Such an order would protect Dattco because Dattco will have security that the money it claims is due will be available. The order likewise protects LimoLiner, because LimoLiner will regain use of the Liner so as to mitigate its damages and resume effectively operating its business. The Defendant will suffer no harm whatsoever as a result of this arrangement, whereas a denial of the motion will result in LimoLiner continuing to incur damages as a result of its loss of use of the Liner while Dattco holds the Liner hostage. Where LimoLiner will continue to suffer irreparable damage if the Liner is not released, and Dattco will suffer no damage whatsoever, the Court should allow the Plaintiff's present motion.

### Balancing of the Equities Tips Heavily for the Plaintiff

Given the fact that the Plaintiff has volunteered to place the disputed amount in escrow or with the Court for security for the Defendant, it is clear that the balancing of the harms tips heavily in favor of the Plaintiff. Indeed, if the money that the Defendant claims it is due for repair is placed in escrow, the Defendant is suffering no harm whatsoever by the allowance of the injunction. All of the money that it claims is due will

be set aside and held in the unlikely event of an eventual judgment for the Defendant.

Conversely, every day that the Defendant wrongfully withholds delivery of the Liner is

another day of the Plaintiff suffering damages. The Plaintiff needs the Liner in order to

effectively operate its full fleet, and it is unable to successfully operate its business

without the vehicle. A return of the Liner will actually allow the Plaintiff to mitigate its

damages and allow the Plaintiff to return to its optimal travel schedule. As such, the

balancing of the harms tips heavily in favor of the Plaintiff, and its motion for injunction

should be allowed.

### Conclusion

For the reasons as set forth above, the Plaintiff respectfully requests that this

Court order the Defendant Dattco to release the vehicle back LimoLiner upon

LimoLiner's payment of $10,404.00 with the Court, or in escrow with its counsel, or

jointly with Defendant's counsel.


Respectfully submitted,
LimoLiner, Inc.,
Plaintiff,
By its attorneys,


James S. Singer
BBO # 464560
Zachary J. Tuck
BBO # 666761
RUDOLPH FRIEDMANN LLP
92 State Street
Boston, MA 02109
(617) 723-7700
jsinger@rflawyers.com
ztuck@rflawyers.com

Date:   October 5 , 2011

8

COMMONWEALTH OF MASSACHUSETTS

NORFOLK, SS.                               SUPERIOR COURT DEPARTMENT
                                          CIVIL ACTION NO.

---

LIMOLINER INC.,                          )
            Plaintiff,                   )
                                         )
vs.                                      )
                                         )
DATTCO, INC.,                            )
            Defendant.                   )
                                         )

---

## PLAINTIFF'S MOTION FOR SHORT ORDER OF NOTICE

The Plaintiff LimoLiner Inc. hereby moves this Honorable Court to issue a short order of

notice to schedule a hearing on Plaintiff's Emergency Motion for Redelivery of Vehicle and

Preliminary Relief ("Motion") at the Court's earliest convenience.

In support of the Motion, the Plaintiff states that notwithstanding the Plaintiff's offer to

escrow the amount the Defendant claims is due for repairs to the Plaintiff's vehicle, namely

$10,404, which the Plaintiff disputes is owed, the Defendant refuses to release the vehicle.  The

vehicle in question is an expensive remodeled motorcoach which the Plaintiff needs to conduct

its business.

WHEREFORE, the Plaintiff LimoLiner, Inc. seeks a hearing at the Court's earliest convenience so the Plaintiff may be heard regarding the redelivery of its vehicle.

Respectfully submitted,
LimoLiner, Inc.,
Plaintiff,
By its attorneys,

James S. Singer
BBO # 464560
Zachary J. Tuck
BBO # 666761
RUDOLPH FRIEDMANN LLP
92 State Street
Boston, MA 02109
(617) 723-7700
jsinger@rflawyers.com
ztuck@rflawyers.com

Date:   October ___, 2011

2

COMMONWEALTH OF MASSACHUSETTS

NORFOLK, SS.                                   SUPERIOR COURT DEPARTMENT
                                              CIVIL ACTION NO.

                                              11  01477

|                          |   |
|--------------------------|---|
| LIMOLINER, INC.,         | ) |
|         Plaintiff        | ) |
|                          | ) |
| v.                       | ) |
|                          | ) |
| DATTCO, INC.,            | ) |
|         Defendant        | ) |

## MOTION TO APPOINT SPECIAL PROCESS SERVER

The Plaintiff moves this Honorable Court pursuant to Mass. R. Civ. P. 4(c) to

appoint All State Constables, Inc., a disinterested and qualified entity whose employees

are believed to be persons over the age of 18 and knowledgeable in the service of process

and not a party to this action, to serve and record all process and Court orders in this case

including any service and recording pursuant to the provisions of Rules 4, 4.1, 4.2, 65 and

65.2 of the Massachusetts Rules of Civil Procedure, in order to assure substantial savings

in time and money.

Respectfully submitted,

LimoLiner, Inc., Plaintiff,
By its attorney,

_James S. Singer, BBO # 464560_
JSinger@RFLawyers.com
Zachary J. Tuck, BBO # 666761
ZTuck@RFLawyers.com
RUDOLPH FRIEDMANN LLP
92 State Street
Boston, MA 02109
(617) 723-7700

*10/5/11 motion is allowed*
*Fishman, J.*
*att. Asorgengel, Esther*
*asst. Clerk*

Date:   October 7, 2011

A TRUE COPY
Attest:
Deputy Assistant Clerk
10/5/11