UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| LIMOLINER, INC., | ) | |
| Plaintiff, | ) | Civil Action No. 11-11877-JCB |
| v. | ) | |
| DATTCO, INC., | ) | |
| Defendant. | ) | |

ORDER ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
[Docket No. 48]

September 30, 2013

Boal, M.J.

Plaintiff LimoLiner, Inc. ("LimoLiner" or "Plaintiff") alleges that it has suffered damages from defendant Dattco, Inc.'s ("Dattco") failure to timely repair and return one of its buses. The complaint contains counts for breach of contract, misrepresentation, replevin, negligence, and unfair or deceptive acts or practices in violation of Chapter 93A. LimoLiner has moved for summary judgment with respect to liability only on a portion of its Chapter 93A claims, namely, that Dattco has violated the Motor Vehicle Regulations promulgated by the Massachusetts Attorney General at 940 CMR § 5.05.[1]  For the following reasons, this Court denies the motion.

---

[1] On January 10, 2012, the parties consented to the jurisdiction of a United States Magistrate Judge for all purposes. Docket No. 17.

I.     PROCEDURAL BACKGROUND

On October 5, 2011, LimoLiner filed its complaint against Dattco in Massachusetts Superior Court.  See Docket No. 5 at 1, 12-53.  LimoLiner also filed an emergency motion for redelivery of its vehicle and preliminary relief.  Docket No. 5 at 1, 54-55.  The Massachusetts Superior Court granted the motion upon deposit of $10,404 with the Clerk's Office.  Id.

Dattco removed the case to this Court on October 24, 2011.  Docket No. 1.  On November 30, 2011, Dattco filed its answer to the complaint and a counterclaim.  Docket No. 9.  Dattco filed an amended answer and counterclaim on December 21, 2011.  Docket No. 13.

Discovery closed on May 15, 2013.  See Docket No. 43.  Limoliner filed its motion for partial summary judgment on July 12, 2013.  Docket No. 48.  On August 9, 2013, Dattco filed an opposition to the motion for partial summary judgment.  Docket No. 53.  Limoliner filed a reply on August 22, 2013.  Docket No. 67.  The Court heard oral argument on September 25, 2013.

II.    FACTS[2]

Limoliner is a Massachusetts corporation that provides scheduled luxury transportation

---

[2] Because this case is before the Court on a motion for summary judgment, the Court sets out any disputed facts in the light most favorable to Dattco, the non-moving party.  See DeNovellis v. Shalala, 124 F.3d 298, 302 (1st Cir. 1997).  The facts are derived from LimoLiner's Local Rule 56.1 Concise Statement of Undisputed Material Facts of Record in Support of Its Motion for Partial Summary Judgment as to Liability Regarding Count V of its Complaint (Docket No. 49); Defendant's Statement of Material Facts as to Which There Exists a Genuine Issue to be Tried and Defendant's Statement of Undisputed Material Facts (Docket No. 55); and Plaintiff's Response to Defendant's Statement of (Additional) Material Facts (Docket No. 68).

between Boston, Framingham, and New York City.  Pl. SOF ¶ 1;[3] Def. Resp. ¶ 1.[4]  LimoLiner operates "Liners," which are large remodeled motorcoach shells, fitted with a range of onboard features, including kitchens, washrooms, luxury seating, satellite tracking for TV and radio, large screen televisions, 7 audio channels, 110v and 12v outlets at each seat, wireless internet, movies, a public address system, and GPS navigation.  Pl. SOF ¶ 2; Def Resp. ¶ 2.

In or about May 30, 2011, one of LimoLiner's vehicles, identified as Liner 3001, had been experiencing mechanical and electrical problems and was in need of repair.  Pl. SOF ¶ 4; Def. Resp. ¶ 4.  Stephen Connolly, LimoLiner's general manager, dispatched one of his mechanics, Michael Shaughnessy, to perform the repairs.  Def. SOF ¶¶ 5, 8.[5]  Shaughnessy was told to do the work when he had time and, after several weeks of little progress being achieved, Connolly decided that an outside vendor would have to be contacted to do the work which appeared to be beyond the capabilities of LimoLiner.  Def. SOF ¶ 9.

On or about May 30, 2011, representatives of LimoLiner met with representatives of Dattco to discuss Dattco performing repairs on Liner 3001.  Pl. SOF ¶ 7; Def. Resp. ¶ 7.  Dattco services and repairs motor vehicles, including buses and motor coaches.  Pl. SOF ¶ 3; Def. Resp. ¶ 3.

LimoLiner asked Dattco to look at the Liner, get them an estimate for what work needed to be done and to do the work.  Def. Resp. ¶ 10.  On May 31, 2011, the Liner was towed from

---

[3] "Pl. SOF" refers to LimoLiner's Local Rule 56.1 Concise Statement of Undisputed Material Facts of Record in Support of Its Motion for Partial Summary Judgment as to Liability Regarding Count V of its Complaint.  Docket No. 49.

[4] "Def. Resp." refers to Dattco's Response to Plaintiff's Statement of Material Facts. Docket No. 55 at 1-8.

[5] "Def. SOF" refers to Defendant's Statement of Material Facts.  Docket No. 55 at 8-14.

LimoLiner's facility in Avon, Massachusetts to Dattco's facility in Randolph, Massachusetts. Pl. SOF ¶ 11; Def. Resp. ¶ 11. Dattco did not perform any work concerning the Liner until June 9, 2011 when it "jump-started" the Liner. Pl. SOF ¶ 12; Def. Resp. ¶ 12. Dattco conducted an initial inspection of Liner 3001 on June 10, 2011. Pl. SOF ¶ 13, Def. Resp. ¶ 13.

On or about June 10, 2011, a list was generated regarding certain repairs that Liner 3001 needed. Pl. SOF ¶ 14; Def. Resp. ¶ 14; Def. SOF ¶ 19. The list of repairs was reviewed and discussed by LimoLiner and Dattco and an agreement was reached as to what repairs Dattco would undertake to perform and what repairs LimoLiner would reserve for its own employees. Def. SOF ¶ 20. Shaughnessy marked up the list, noting the responsibility of each party for each repair. Def. SOF ¶ 21.

At around that time, a Dattco representative sent an email to Connelly with an estimate that the noted repairs would take approximately 40 hours to complete, at $85 per hour. Def. SOF ¶ 24. Dattco began work on June 16, 2011 and continued work on the vehicle during June 2011. Def. SOF ¶ 25. On July 28, 2011, Dattco responded to an inquiry by Connelly stating that Dattco had performed 62.2 hours of work but that it would adjust the hours so that LimoLiner would not be charged for that many hours. Def. SOF ¶¶ 27-28.

At the request of LimoLiner, the parties met on August 4, 2011, at which time LimoLiner wanted to know when the repairs would be completed and demanded to know how Dattco was going to compensate LimoLiner for the alleged losses it had sustained. Def. SOF ¶ 29. On August 8, 2011, Connelly hand-delivered a letter to Dattco, complaining about how little work had been done on the vehicle. Def. SOF ¶ 30. In the letter, Connelly admitted that Dattco had been provided with a list of repairs that LimoLiner had identified as necessary and the parties

agreed that Dattco would carry them out.  Id.  He also admits that Dattco had estimated that this work would take approximately 40 hours to complete, in addition to the cost of the required parts.  Id.  He also stated that LimoLiner was to be advised of any additional work required to return the Liner fit for service, but he did not complain about not being advised of any additional work required.  Id.  Instead, he complained about the level of attention, time and resources assigned to the job as being so limited that there was no possibility of the work being done in a timely manner.  Id.  Connelly offered to settle the dispute on the terms that Dattco was to deliver the Liner fit for service by 5:00 p.m. on Friday, August 12, 2011, that Dattco would bill LimoLiner for the estimated 40 hours, plus the cost of parts for the work initially identified, plus labor and parts for additional necessary work not listed that was required.  Id.  Connelly also demanded that Dattco reimburse LimoLiner for a portion of its alleged loss of revenue, namely 3 weeks of loss of use, valued at $42,000.  Id.

A final bill for the work done by Dattco, in the amount of $10,404, was sent to LimoLiner on August 25, 2011.  Def. SOF ¶ 31.

LimoLiner alleges that, prior to charging for the repairs, (1) Dattco did not receive any written authorization signed by LimoLiner listing the specific repairs to be performed and the total price to be paid for such repairs to the Liner, including parts and labor; (2) Dattco did not notify LimoLiner of the specific repairs to be performed on the Liner and the total price to be charged to LimoLiner for such repairs, including parts and labor; (3) Dattco did not obtain authorization to perform the specific repairs; and (4) Dattco did not obtain a written waiver by LimoLiner whereby LimoLiner waived its right to know before any repairs were performed on the Liner what the repairs would be and what their cost would be.  Pl. SOF ¶ 17.  In addition,

LimoLiner alleges that, prior to commencing the repairs, Dattco did not record in writing the specific repairs requested by LimoLiner, or a brief description of the problems that LimoLiner encountered with the Liner which caused to bring it to Dattco's repair shop. Pl. SOF ¶18. Finally, LimoLiner alleges that although it provided oral authorization to Dattco to make certain repairs, Dattco failed to maintain written records containing the date and time the authorization was received; the name of the repair shop employee who received the oral authorization and the name of the LimoLiner employee who made such authorization; and the exact authorization received. Id.

Dattco disputes these allegations and asserts that LimoLiner was provided with a list of specific repairs, that the list was agreed to by the parties and authorized by LimoLiner, and that Dattco provided an estimate, via email, of the cost of the repairs. Def. Resp. ¶¶ 17, 18. In addition, prior to issuing an invoice for the work done, Connelly was made aware, via email, of the total hours Dattco had worked on the vehicle at that time. Id. Dattco suggests that the dispute between the parties arose only after another one of LimoLiner's vehicles, Liner 3002, was destroyed in a fire in late June 2011, which resulted in LimoLiner's interest in a faster completion of the repairs to Liner 3001. See Def. SOF ¶¶ 4, 14-15, 26-27.

III.    ANALYSIS

    A.    Standard Of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is 'genuine' if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party." Sanchez v. Alvarado, 101 F.3d 223, 227

(1st Cir. 1996) (quotations and citations omitted). A material fact is one which has "the potential to affect the outcome of the suit under the applicable law." Id. (quotations and citations omitted).

The moving party bears the initial burden of establishing that there is no genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If that burden is met, the opposing party can avoid summary judgment only by providing properly supported evidence of disputed material facts that would require trial. See id. at 324. "[T]he non-moving party 'may not rest upon mere allegation or denials of his pleading,'" but must set forth specific facts showing that there is a genuine issue for trial. LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).

The court must view the record in the light most favorable to the non-moving party and indulge all reasonable inferences in that party's favor. See O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993). "If, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate." Walsh v. Town of Lakeville, 431 F. Supp. 2d 134, 143 (D. Mass. 2006).

B. Chapter 93A

Chapter 93A prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws ch. 93A, §2(a). A successful claim under Chapter 93A requires a showing of (1) a deceptive act or practice on the part of the defendant; (2) an injury or loss suffered by the plaintiff, and (3) a causal connection between the defendant's deceptive act or practice and the plaintiff's injury. Casavant v. Norwegian Cruise Line, Ltd., 76 Mass. App. Ct.

73, 76 (2009), aff'd, 460 Mass. 500 (2011) (citing G.L. c. 93A, § 9); Hershenow v. Enterprise Rent-A-Car Co. of Bos., Inc., 445 Mass. 790, 797 (2006). "Chapter 93A liability is decided case-by-case, and Massachusetts courts have consistently emphasized the 'fact-specific nature of the inquiry.'" Arthur D. Little, Inc. v. Dooyang Corp., 147 F.3d 47, 55 (1st Cir. 1998) (citation omitted). "Although whether a particular set of acts, in their factual setting, is unfair or deceptive is a question of fact, the boundaries of what may qualify for consideration as a Chapter 93A violation is a question of law." Id. at 54 (quoting Ahern v. Scholz, 85 F.3d 774, 797 (1st Cir. 1996)).

The Attorney General of Massachusetts is authorized to issue regulations to enforce Chapter 93A's prohibition against unfair or deceptive acts or practices. M.G.L. c. 93A, § 2(c); Barnes v. Fleet Nat'l Bank, N.A., 370 F.3d 164, 176 (1st Cir. 2004). The Attorney General's Regulation 3.16(3) states that a violation of "existing statutes, rules, regulations or laws, meant for the protection of the public's health, safety or welfare promulgated by the Commonwealth or any political subdivision thereof intended to provide the consumers of this Commonwealth protection" constitutes a per se violation of Chapter 93A. 940 C.M.R. § 3.16(3). Section 5.05, in turn, regulates motor vehicle repairs and services and provides that certain practices by repair shops are unfair or deceptive. 940 C.M.R. § 5.05.

    1.    The Motor Vehicle Regulations

LimoLiner argues that there is no genuine issue of material fact that Dattco violated Sections 5.05(2)(e), (3), and (5) of the Motor Vehicle Regulations and, therefore, also violated Chapter 93A. Section 5.05(2)(e) provides:

> (2) It is an unfair or deceptive act or practice for a repair shop, prior to commencing repairs on a customer's vehicle, to fail to record in writing the

following information:

...

(e) The specific repairs requested by the customer, or, if the customer has not requested specific repairs, a brief description of the problems the customer has encountered with the vehicle which caused him to bring it to the repair shop.

940 C.M.R. § 5.05(2)(e). Section 5.05(3) provides:

(3) It is an unfair or deceptive act or practice for a repair shop to charge a customer for any repairs on a customer's motor vehicle unless either:

(a) The repair shop has received written authorization signed by the customer listing the specific repairs to be performed and the total price to be paid for such repairs, including parts and labor; or

(b) The repair shop has received written authorization signed by the customer listing the specific repairs to be performed and the charges for such repairs, including parts and labor, are displayed in a clear and conspicuous manner on the premises of the repair shop; or

(c) If the repair shop is unable to obtain written authorization from the customer to perform specific repairs (as when the specific repairs to be performed on the vehicle are not known at the time the vehicle is delivered to the repair shop), the repair shop notifies the customer, prior to commencing any repairs, of the specific repairs to be performed on the vehicle and the total price to be charged the customer for such repairs, including parts and labor, and obtains the customer's authorization to perform such repairs; or

(d) The repair shop has obtained, prior to commencing repair of the vehicle, a written waiver, in the following form, executed by the customer in a knowing, voluntary and intelligent manner:

Waiver

I understand that I have the right to know before authorizing any repairs what the repairs to my car will be and what their cost will be. You need not obtain approval from me for repairs or inform me prior to performing repairs what the repairs are or their cost, if the total amount for repairs does not exceed $ _____

SIGNATURE

Such waiver may be included as part of a repair order provided, however, that such waiver is printed in clear and conspicuous type and that its execution may only be accomplished by the customer's signature separate from that appearing elsewhere on the order.

(e) The provisions of 940 CMR 5.05(3) shall not be applicable if the customer

brings his or her motor vehicle to the repair shop before or after its usual business hours, or, at the customer's request, repair services are rendered off the premises of the repair shop.

940 C.M.R. § 5.05(3). Section 5.05(5) provides:

(5) It is an unfair or deceptive act or practice for a repair shop which receives any oral authorization from a customer (whether such authorization is to perform certain repairs, to proceed with repairs even at an increased cost, to extend the time during which repairs may be performed, or any other type of authorization) to fail to maintain written records containing the following information:

(a) The date and time the authorization was received;

(b) The name of the repair shop employee receiving the oral authorization and the name of the person making the authorization;

(c) A statement of the exact authorization received; and

(d) If the authorization was received over the telephone and the repair shop placed the call, the telephone number called.

940 C.M.R. § 5.05(5).

Issues of fact exist as to whether Dattco violated these regulations. Viewing the facts in the light most favorable to Dattco, a reasonable fact finder could find that sometime after Liner 3001 was towed to Dattco and before repair work was performed, a list of all necessary repairs was generated and the parties agreed which repairs would be performed by each of the parties. Def. SOF ¶¶ 19-20. Although the list itself did not contain the price to be paid for the repairs, Dattco provided an estimate of the price within one week to ten days after the Liner was towed to Dattco's facility. Def. SOF ¶ 24. In addition, while LimoLiner did not "sign" the list of repairs, it was Shaughnessy, one of LimoLiner's own mechanics, who marked up the list, noting the responsibility of each party for each repair. Def. SOF ¶ 21. It would be reasonable to find that based upon the agreed list of repairs, Dattco had written authorization from LimoLiner to

proceed with the repairs listed on that sheet, particularly in light of the dearth of caselaw on this issue and the fact that the Court must construe the record in the light most favorable to Dattco. LimoLiner was kept informed of developments in the status of repairs. Def. SOF ¶¶ 27-28. LimoLiner has not shown that the scope of the agreed work changed so as to require that Dattco document any oral authorizations to proceed with the work. Accordingly, material issues of fact preclude summary judgment on the issue of whether Dattco violated the Motor Vehicle Regulations.

    2.    <u>Loss Of Money Or Property</u>

Even if the Court were to find that Dattco violated the provisions of 940 C.M.R. § 5.05, issues of fact exist regarding whether Dattco's alleged violations caused LimoLiner a "loss of money or property." In order to prevail on its Chapter 93A claim, LimoLiner must show that it suffered a "loss of money or property." M.G.L. c. 93A, § 11; <u>Fundquest Inc. v. Travelers Casualty and Surety Co.</u>, 715 F. Supp. 2d 202, 211 n. 17 (D. Mass. 2010) (Under M.G.L. c. 93A, § 11, "a showing that an unfair or deceptive act was a proximate cause of a loss of money or property is an essential element of the action."). "'[M]oney' means money, not time," and "'property' means the kind of property that is purchased or leased, not such intangibles as a right to sense of security to peace of mind, or to personal liberty." <u>Arthur D. Little, Inc.</u>, 147 F.3d at 56. The loss of money or property must stem from the allegedly deceptive or unfair act. <u>Id.</u> "In the absence of a causal connection between the alleged unfair acts and the claimed loss, there can be no [chapter 93A] recovery." <u>RGJ Assocs., Inc. v. Stainsafe, Inc.</u>, 338 F. Supp. 2d 215, 237 (D. Mass. 2004) (quoting <u>Massachusetts Farm Bureau Federation v. Blue Cross</u>, 403 Mass. 722 (1989)). Accordingly, not only must LimoLiner show that it suffered a loss of money or

property but it must also show that Dattco's violations of the Motor Vehicle Regulations proximately caused that loss.

LimoLiner alleges that Dattco's acts caused it a loss of money and property in that "LimoLiner was injured by Dattco's unfair and deceptive act because Dattco failed to clearly delineate in writing the specific repairs requested by LimoLiner which led to a dispute by the parties and monetary loss to LimoLiner by its delay in obtaining the return of the vehicle and loss of revenues as a result thereof." Docket No. 50 at 9-10; see also id. at 11, 13. However, Dattco has pointed to evidence raising an issue of fact as to the proximate cause of LimoLiner's alleged loss. Viewing the record in the light most favorable to Dattco, a reasonable fact finder could conclude that the none of the alleged violations had anything to do with the dispute that arose in this matter and LimoLiner's alleged losses. Instead, one could conclude that the alleged dispute and loss of revenue arose because Dattco did not make the agreed repairs fast enough. See Def. SOF ¶¶ 26-27, 29-30, 32. Dattco's failure to make the repairs in a timely manner does not implicate any of the cited regulations.

LimoLiner also alleges that "[e]ven after the Liner was returned, it was not repaired as agreed and it had to be serviced by another party at substantial costs and delay." Id. at 10; see also id. at 11-12. Specifically, LimoLiner alleges that if Dattco had provided LimoLiner with a list of specific repairs, there would be no dispute as to what repairs the parties agreed Dattco would perform. Docket No. 67 at 11. LimoLiner points to Dattco's alleged failure to repair or replace an inverter, as agreed by the parties. Id. at 11-12. However, LimoLiner did not point to any evidence in the record that conclusively shows that the parties agreed that Dattco would replace the inverter. Indeed, Dattco disputes that the parties agreed that Dattco would replace

-12-

the inverter and maintains that all of the agreed repairs were noted in the list marked by Shaughnessy. Def. SOF ¶ 23. Accordingly, issues of fact regarding the proximate cause of LimoLiner's alleged losses also preclude summary judgment.

IV. ORDER

For the foregoing reasons, the Court denies LimoLiner's motion for summary judgment. The Court will issue a pretrial scheduling order.

    /s/ Jennifer C. Boal
JENNIFER C. BOAL
UNITED STATES MAGISTRATE JUDGE