# United States Court of Appeals
## For the First Circuit

---

No. 18-1800

LIMOLINER, INC.,

Plaintiff, Appellant,

v.

DATTCO, INC.,

Defendant, Appellee.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Jennifer C. Boal, U.S. Magistrate Judge]

---

Before

Lynch, Selya, and Boudin,
Circuit Judges.

---

Robert E. Curtis, Jr., Jonathon D. Friedmann, and Rudolph Friedmann LLP on brief for appellant.
Christopher S. Williams and Williams & Associates on brief for appellee.

---

March 22, 2019

---

**LYNCH**, *Circuit Judge*. We hold that the plaintiff, LimoLiner, has not met its burden of showing that the defendant repair company's technical violations of the Massachusetts Attorney General's regulations that govern motor vehicle repairs, 940 Mass. Code Regs. § 5.05, caused LimoLiner the loss of any money or property. On that basis, we affirm the Magistrate Judge's holding that the repair company is not liable under Chapter 93A. LimoLiner, Inc. v. Dattco, Inc., No. CV 11-11877-JCB, 2017 WL 6947783, at *9 (D. Mass. Nov. 27, 2017). We reach no other issue.

I.

This lengthy litigation about repair work to a luxury motor coach has already yielded three appellate opinions. See LimoLiner, Inc. v. Dattco, Inc. (LimoLiner I), 809 F.3d 33 (1st Cir. 2015); LimoLiner, Inc. v. Dattco, Inc. (LimoLiner II), 57 N.E.3d 969 (Mass. 2016); LimoLiner, Inc. v. Dattco, Inc. (LimoLiner III), 839 F.3d 61 (1st Cir. 2016). Further details are in those opinions, so we keep the background discussion here brief. The facts are not in dispute.

The plaintiff, LimoLiner, Inc., is a Massachusetts corporation that owns and operates a fleet of luxury motor coaches. LimoLiner, 2017 WL 6947783, at *2. The defendant, Dattco, Inc., is a Connecticut corporation that repairs motor vehicles, including buses and coaches. Id.

- 2 -

In May 2011, LimoLiner met with Dattco to discuss repairs to one of LimoLiner's coaches. Id. at *3. LimoLiner said it wanted the coach repaired "as soon as possible," but did not set a date. Id. Dattco understood that the coach "had been out of service for quite some time." Id.

LimoLiner orally requested that Dattco repair, among other things, the vehicle's "inverter," a device that converts the vehicle's power into a voltage that passengers can use, for instance, to charge their electronic devices. Id. Dattco agreed to make the necessary repairs, including to the inverter. Id. Dattco also provided an oral estimate for the cost of labor, but did not provide an estimate of the cost of parts. Id. at *5.

Dattco, in response to the oral request, made and sent to LimoLiner a list of the requested repairs, but that list did not include specifically repairs to the inverter. Id. at *3. It was unclear whether the inverter would need repair or replacement, and the parties disputed who would be responsible, but the Magistrate Judge found that "the parties agreed that the inverter would be replaced or repaired by Dattco." Id.

Dattco began working on the coach "around June 16, 2011." Id. Dattco timesheets show that its mechanics worked on the inverter on July 19, 2011. Id. The Magistrate Judge found that Dattco continued to work on the inverter in August 2011. Id. at *4.

- 3 -

When a fire destroyed another LimoLiner coach in late June 2011, LimoLiner told Dattco that it needed the coach in Dattco's possession so it was urgent that the repairs be completed quickly. Id. When Dattco had not completed the repairs by August 2011, LimoLiner demanded to know how Dattco would compensate LimoLiner for the monetary losses it claimed it had sustained to that point. Id.

Later that month, Dattco told LimoLiner that the coach was ready to be picked up. Id. at *5. Dattco had worked on the inverter, but it had not yet been totally fixed. Id. Dattco sent LimoLiner an invoice for $10,404 for its labor and for some parts, but not including inverter parts. Id. LimoLiner refused to pay the invoice; Dattco, in turn, refused to return the coach without there being any payment. Id.

In October 2011, LimoLiner sued in Massachusetts Superior Court for breach of contract, misrepresentation, negligence, replevin, and Chapter 93A violations. As to the Chapter 93A claim, LimoLiner alleged that Dattco had engaged in an "unfair or deceptive act[] or practice[]" by, among other things, failing to record in writing LimoLiner's oral request for inverter work and charging LimoLiner for repairs without written authorization. LimoLiner alleged that these actions were in violation of motor vehicle regulations promulgated by the Massachusetts Attorney General. 940 Mass. Code Regs. § 5.05.

Dattco removed the case to federal court and counterclaimed for breach of contract and quantum meruit.

Following a jury-waived trial, the Magistrate Judge found for LimoLiner on the breach of contract claim, but for Dattco on the remaining claims, including the quantum meruit counterclaim. LimoLiner, Inc. v. Dattco, Inc., No. CIV.A. 11-11877-JCB, 2014 WL 4823877, at *11 (D. Mass. Sept. 24, 2014). The Magistrate Judge also rejected LimoLiner's regulatory claim, concluding that the Attorney General's motor vehicle regulations did not apply to disputes between businesses. Id. The Magistrate Judge awarded LimoLiner $35,527.89 in damages for breach of contract. Id. This damages amount included the "three-week loss of use" of the coach that resulted from Dattco's failure to repair the inverter. Id. at *10. The Magistrate Judge also awarded Dattco $10,404 in damages on its quantum meruit counterclaim, making LimoLiner's total recoverable damages $25,123.89. Id. at *11.

On appeal, we affirmed the Magistrate Judge's rulings, save for the rulings on the regulatory claim, which we certified to the Massachusetts Supreme Judicial Court (SJC), asking whether "940 [Mass. Code Regs.] § 5.05 appl[ies] to transactions in which

the customer is a business entity."[1] LimoLiner I, 809 F.3d at 38. The SJC answered "yes." LimoLiner II, 57 N.E.3d at 970. We remanded for further findings on LimoLiner's claims of violation of the Attorney General's regulations. LimoLiner III, 839 F.3d at 62.

On remand, the Magistrate Judge found that Dattco had violated two of the Attorney General's motor vehicle regulations: 940 Mass. Code Regs. § 5.05(2)(e) ("Section 5.05(2)(e)") and § 5.05(3) ("Section 5.05(3)").[2] LimoLiner, 2017 WL 6947783, at *6-7. Dattco has not appealed those findings, so we take them as established fact.

In alternate holdings, the Magistrate Judge found that these regulatory violations did not automatically establish liability under Chapter 93A;[3] LimoLiner still had to show that

---

[1] LimoLiner did not ask that we certify the question of whether every violation of the motor vehicle regulations was per se a Chapter 93A violation.

[2] Section 5.05(2)(e) states that "[i]t is an unfair or deceptive act or practice for a repair shop, prior to commencing repairs on a customer's vehicle, to fail to record in writing . . . [t]he specific repairs requested by the customer." 940 Mass. Code Regs. § 5.05(2)(e). And Section 5.05(3) states that "[i]t is an unfair or deceptive act or practice for a repair shop to charge a customer for any repairs on a customer's motor vehicle" without providing an estimate of the cost of parts necessary to perform the work. Id. § 5.05(3).

[3] The Magistrate Judge relied on McDermott v. Marcus, Errico, Emmer & Brooks, P.C., 775 F.3d 109 (1st Cir. 2014), and on Sharp v. Hylas Yachts, LLC, 872 F.3d 31 (1st Cir. 2017), to reject LimoLiner's claim that because Dattco had violated the Attorney General's motor vehicle regulations, it was per se liable under

Dattco's regulatory violations were unfair or deceptive and had failed to do so. Id. at *8. And the Magistrate Judge found explicitly or by implication that LimoLiner had not proved any injury from these violations of regulations. See id. at *8-9, *9 n.8. The Magistrate Judge then denied LimoLiner's motion to alter or amend the judgment.

LimoLiner has appealed, asking for entry of judgment in its favor, not for remand, on its claim that Dattco is liable under Chapter 93A.

II.

Because this case comes to us after a bench trial, we review the Magistrate Judge's legal conclusions de novo and factual findings for clear error. McDermott v. Marcus, Errico, Emmer & Brooks, P.C., 775 F.3d 109, 115 (1st Cir. 2014); cf. R.W. Granger & Sons, Inc. v. J & S Insulation, Inc., 754 N.E.2d 668, 675 (Mass. 2001) ("A ruling that conduct violates [Chapter] 93A is a legal, not a factual, determination."). We affirm the Magistrate Judge's conclusion that Dattco is not liable under Chapter 93A. See Chiang

---

Chapter 93A. LimoLiner, 2017 WL 6947783, at *8. LimoLiner argues that this court's precedents on per se Chapter 93A liability go beyond any Massachusetts appellate court decision. We do not address whether there is any tension between our decisions, on the one hand, and the SJC's decisions, including Armata v. Target Corp., 99 N.E.3d 788 (Mass. 2018), on the other. And we note that LimoLiner has never suggested that we certify the issue of per se liability for violations of the Attorney General's motor vehicle regulations to the SJC.

- 7 -

v. Verizon New Eng. Inc., 595 F.3d 26, 34 (1st Cir. 2010) ("We may affirm the district court on any basis apparent in the record."). LimoLiner has not established that Dattco's regulatory violations caused any injury or harm, which is a required element of its Chapter 93A claim. See Hiam v. HomeAway.com, Inc., 887 F.3d 542, 547-48 (1st Cir. 2018).

Chapter 93A makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws ch. 93A, § 2(a). Section 11 of Chapter 93A "bestows a right of action on '[a]ny person who engages in the conduct of any trade or commerce and who suffers any loss of money or property, real or personal,' as a result of the unfair or deceptive act or practice." Auto Flat Car Crushers, Inc. v. Hanover Ins. Co., 17 N.E.3d 1066, 1076 (Mass. 2014) (quoting Mass. Gen. Laws ch. 93A, § 11). This provision "serves 'the important public policy of encouraging the fair and efficient resolution of business disputes.'" Id. (quoting R.W. Granger, 754 N.E.2d at 683).

A Section 11 plaintiff must show that the defendant's alleged unfair or deceptive method, act, or practice caused a loss of money or property. See id. at 1074-75. "A plaintiff's failure to establish both factual causation and proximate causation is fatal to her Chapter 93A claim." Walsh v. TelTech Sys., Inc., 821 F.3d 155, 160 (1st Cir. 2016).

- 8 -

LimoLiner did not show that Dattco's violation of Section 5.05(2)(e) or Section 5.05(3) caused it any loss of money or property. As to Section 5.05(3), the Magistrate Judge found that "LimoLiner [had] presented no evidence that Dattco overcharged for the parts used in the repairs it made." LimoLiner, 2017 WL 6947783, at *9. Rather, "the parties agreed that LimoLiner would provide some of the parts in order to avoid having to pay markups to Dattco, providing a reason why Dattco provided an estimate for labor but not parts." Id. Because of this, the Magistrate Judge explicitly found that there was no injury from Dattco's violation of Section 5.05(3). Id. at *9 n.8. There is no clear error in that finding.

As to Section 5.05(2)(e), the Magistrate Judge found that Dattco "violated this provision by failing to record in writing that LimoLiner had requested the inverter to be repaired." Id. at *6. It follows from the Magistrate Judge's factual findings that LimoLiner did not show that this regulatory violation caused any injury.[4] As the Magistrate Judge found, even without the inverter being included on the list of requested repairs, Dattco mechanics worked on the inverter in July and August 2011, which is when most of the repair work to the coach took place. See id. at

---

[4] Because the Magistrate Judge resolved this case on other grounds, there was no explicit factual finding on this issue. See LimoLiner, 2017 WL 6947783, at *8-9.

- 9 -

*3-4. And in August, the parties were actively discussing finding an inverter from a supplier, id. at *4, so LimoLiner knew that Dattco was working on the inverter even though that part was not listed among the requested repairs. This discussion included "a miscommunication as to who was responsible for supplying the new inverter," which the Magistrate Judge said, "appears to have been" a possible cause of "Dattco's failure to perform the inverter repairs." Id. at *8. Against these facts, LimoLiner has produced no evidence, just speculation, that Dattco's failure to record the inverter repair caused LimoLiner any harm. The record permits only one conclusion: there is no proof that Dattco's regulatory violation caused LimoLiner's injury. See Pullman-Standard v. Swint, 456 U.S. 273, 292 (1982) (noting that when "the record permits only one resolution of" a factual dispute, it is "elementary" that an appellate court need not remand but may resolve it in the first instance).

III.

We affirm. Costs are awarded to Dattco.